# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 123

**OCTOBER TERM, A.D. 2021**

**November 5, 2021**

SEAN ALAN ROGERS,

Appellant
(Defendant),

v.

S-21-0027

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Thomas W. Rumpke, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General. Argument by Mr. Eames.

*Before FOX, C.J., and DAVIS, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Sean Alan Rogers was originally charged with one count of first-degree sexual assault and one count of delivery of a controlled substance.  Sixteen days before trial, the State amended its information to include one count of second-degree sexual abuse of a minor.  A jury found Mr. Rogers guilty of second-degree sexual abuse of a minor and acquitted him of the other two charges.  He appeals, claiming the district court abused its discretion when it allowed the State to amend the information and that it violated his right to a speedy trial.  We affirm.

*ISSUES*

[¶2]    The issues are:

> 1.    Did the district court abuse its discretion when it allowed the State to amend the information sixteen days prior to trial?
>
> 2.    Was Mr. Rogers deprived of his right to a speedy trial?

*FACTS*

**A.    Underlying Facts**

[¶3]    On June 14, 2019, Brandy Blaylock—accompanied by her two children, AG, her fifteen-year-old daughter, and XG, her thirteen-year-old son—went to the hospital in Gillette.  Ms. Blaylock was admitted and she asked a friend, Mr. Rogers, if he would come pick up her children.  Mr. Rogers picked them up and took them to his home, where they spent the night.  The next day, he rented a car and took AG, XG, and a friend of his, Tyler Loman, on a road trip.  AG and XG testified that the group drove first to Fort Collins and then to Denver, Colorado, where Mr. Rogers bought marijuana and marijuana product known as wax.[1]

---

[1] Wax is a

> resin-like substance concentrated from the plant that produces a far more intense high.  This substance . . . may be a viscous liquid, a wax-like substance (thus the name), or a hard, crystallized material similar to hard candy that is typically vaporized and inhaled.  Often butane or isopropyl alcohol are involved in the production of the substance; this can pose an incredible danger to the user.

Jeffrey Juergens, *Marijuana Addiction and Abuse*, Addiction Center (last edited Oct. 10, 2021), https://www.addictioncenter.com/drugs/marijuana/.

[¶4]    Late that night, the group returned to Mr. Rogers' home in Gillette. AG and XG testified that on their return, they smoked the marijuana and wax in the garage. According to AG, the wax was much stronger than marijuana in plant form. She testified that her head "really hurt and [she] felt dizzy." AG and XG eventually went to the basement to sleep. AG testified that she was awakened by Mr. Rogers. The next thing she remembers is waking up on Mr. Rogers' bedroom floor with Mr. Rogers on top of her. AG stated that she felt him "inside" of her and that she "tried to scream" but "nothing came out." She testified that she was still under the influence of marijuana. After this, she went into the bathroom and noticed that her shirt was wet and her clothes were disheveled. She returned home the next day and threw her shirt and pants under her bed. A couple of weeks later, she told her mother what had happened. Her mother retrieved her clothes and took them to the police station where she and AG reported AG's account of the assault to law enforcement.

[¶5]    Mr. Rogers recounted events differently. He testified that he, AG, XG, and Mr. Loman drove, not to Colorado, but to Cheyenne, where he purchased tobacco and CBD oil at two separate smoke shops. He testified that after the group returned to Gillette, AG and XG went downstairs where they had slept the previous night. He remained in the garage where he drank two beers and slept until the next morning. Mr. Rogers also testified that he did not assault AG.

[¶6]    Crime lab analysis found seminal fluid on AG's pants and shirt. DNA profiles of the sperm samples were consistent with Mr. Rogers' DNA. Nonsperm samples "demonstrated the presence of a mixture [of DNA] from which" Mr. Rogers, AG, and an additional unidentified individual could not be excluded.[2]

## B.    Initial Charges

[¶7]    On October 17, 2019, the State charged Mr. Rogers with one count of first-degree sexual assault, in violation of Wyo. Stat. Ann. § 6-2-302(a)(iii),[3] and one count of delivery of a controlled substance, in violation of Wyo. Stat. Ann. § 35-7-1031(a)(ii).[4] At

---

[2] Mr. Rogers' theory of the case was that his DNA was planted on AG's clothing by her mother.
[3] First-degree sexual assault is defined, in relevant part, as:

> (a)    Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:
>
> .    .    .
>
> (iii)    The victim is physically helpless, and the actor knows or reasonably should know that the victim is physically helpless and that the victim has not consented[.]

Wyo. Stat. Ann. § 6-2-302(a)(iii) (LexisNexis 2021).
[4] Wyo. Stat. Ann. § 35-7-1031(a)(ii) reads:

> (a)    Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a

his arraignment on November 15, 2019, Mr. Rogers pled not guilty to both counts. Mr. Rogers filed a written demand for speedy trial. The district court set a motion cut-off deadline of January 24, 2020, and a trial for March 23, 2020.

## C. Trial Continuances

[¶8] On March 19, 2020, citing the COVID-19 pandemic, the district court continued Mr. Rogers' trial to May 5, 2020, a date within 180 days of his arraignment. On April 17, 2020, the district court notified the parties—that due to the worsening pandemic and this Court's *Order Adopting Temporary Plan to Address Health Risks Posed by the COVID-19 Pandemic* (COVID-19 Restriction Order), which recommended in-person proceedings be suspended until May 31, 2020—it proposed continuing Mr. Rogers' trial beyond the W.R.Cr.P. 48, 180-day speedy trial deadline. Trial was set for July 14, 2020. On May 15, 2020, an updated COVID-19 Restriction Order loosened some of the recommendations for non-jury in-person proceedings, but it also recommended that no jury trials take place until August 3, 2020, and then only after development of written plans to assure the safety of all participants in those trials. On June 5, 2020, the district court again continued Mr. Rogers' jury trial to comply with the recommendations in the updated order. Trial commenced on August 3, 2020.

## D. The Amended Information

[¶9] On June 30, 2020, the State filed a motion to amend the information to add a charge of second-degree sexual abuse of a minor, in violation of Wyo. Stat. Ann. § 6-2-315(a)(i).[5] As grounds, the State asserted it had "recently received information" from a telephone call made by Mr. Rogers from jail. Based on that call, the State believed Mr. Rogers might allege AG consented to the assault, in contrast to the position he had taken in his police interviews which was that the assault never occurred. The State argued its request to amend the information adding a new charge was justified because of "the new alleged circumstances." The call underlying the State's motion was between Mr. Rogers and his pastor. Mr. Rogers objected to the amendment arguing the conversation was

---

controlled substance. Any person who violates this subsection with respect to:

. . .

(ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both[.]

Wyo. Stat. Ann. § 35-7-1031(a)(ii) (LexisNexis 2021).

[5] Second-degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-315(a)(i) occurs when an actor "(i) Being seventeen (17) years of age or older, . . . inflicts sexual intrusion on a victim who is thirteen (13) through fifteen (15) years of age, and the victim is at least four (4) years younger than the actor[.]" Wyo. Stat. Ann. § 6-2-315(a)(i) (LexisNexis 2021).

protected by the clergyman-penitent privilege and any use of it would violate his constitutional right to free exercise of religion. On July 17, 2020, the district court granted the motion to amend the information. At his arraignment on the added charge, Mr. Rogers pled not guilty.

## E.  The Verdict

[¶10] The jury convicted Mr. Rogers of second-degree sexual abuse of a minor and acquitted him of first-degree sexual assault and delivery of a controlled substance. The district court sentenced him to a prison term of between thirteen and seventeen years. Mr. Rogers appeals.

## *DISCUSSION*

### I.  *Did the district court abuse its discretion when it allowed the State to amend the information sixteen days prior to trial?*

[¶11] Wyoming Rule of Criminal Procedure 3(e) governs motions to amend an information. It provides:

> (e)  *Amendment of information or citation.* . . . The court may permit an information or citation to be amended:
>
> > (1)  With the defendant's consent, at any time before sentencing.
> >
> > (2)  **Whether or not the defendant consents:**
> >
> > > (A)  **At any time before trial if substantial rights of the defendant are not prejudiced.**
> > >
> > > (B)  At any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

W.R.Cr.P. 3(e) (emphasis added). If a defendant does not consent to an amendment, as was the case here, the court may permit an amendment to the information "any time before trial if substantial rights of the defendant are not prejudiced." W.R.Cr.P. 3(e)(2)(A).

[¶12] When the State moved to amend the information adding the second-degree sexual abuse of a minor charge, Mr. Rogers argued that his communications were protected by

4

the "clergyman-penitent privilege," and that use of the phone call between him and his pastor would "have a chilling effect on [his] First Amendment rights" and would violate his right to the free exercise of religion. The district court granted the State's motion, reasoning:

> [Mr. Rogers'] arguments regarding the recording of his allegedly privileged communication are a red herring. Whether the State can use the evidence obtained from the recording is a wholly different question from whether the State can amend the information. Based upon the current record, the Court cannot determine if the communication remained privileged or the privilege was waived. It appears [Mr. Rogers] knowingly spoke on a recorded line without making any request for a confidential communication. However, that is irrelevant to the question of whether [Mr. Rogers'] substantial rights would be prejudiced by allowing an amended charge. . . . [T]he Court concludes that [Mr. Rogers'] substantial rights will not be prejudiced by amending the information to include a charge based upon the exact same facts underlying the existing charges.

[¶13] On appeal, Mr. Rogers does not raise privileged communication or violation of his First Amendment constitutional rights—his arguments below. He argues, instead, that the district court abused its discretion when it granted the motion to amend the charge sixteen days before trial after concluding his substantial rights were not prejudiced. He asserts that the amendment was untimely given that the evidence underlying it was not new; it violated W.R.Cr.P. 3 by charging a new offense; it was illegal as he received no preliminary hearing on the new charge; and it prejudiced him because he had insufficient time to prepare to defend against the new charge. The State argues that Mr. Rogers waived these arguments because he failed to raise them below.

[¶14] An argument may not be made for the first time on appeal. *Davis v. State*, 2018 WY 40, ¶ 32, 415 P.3d 666, 678 (Wyo. 2018); *Black v. State*, 2017 WY 135, ¶ 15, 405 P.3d 1045, 1051 (Wyo. 2017); *Miller v. Beyer*, 2014 WY 84, ¶ 34, 329 P.3d 956, 967 (Wyo. 2014). "This . . . holds true 'whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court.'" *Davis*, ¶ 32, 415 P.3d at 678 (quoting *Gumpel v. Copperleaf Homeowners Ass'n, Inc.*, 2017 WY 46, ¶ 32, 393 P.3d 1279, 1291 n.7 (Wyo. 2017)) (internal citations omitted). Parties are bound by the theories they advance below because it is "not appropriate for this Court to reverse a district court ruling on grounds that were never presented to it. This is particularly true

5

when our review is for an abuse of discretion[.]"[6] *Miller*, ¶ 34, 329 P.3d at 967 (citations omitted). "We recognize only two exceptions to that rule: when the issue raises jurisdictional questions or it is of such a fundamental nature that it must be considered." *Harrison v. State*, 2021 WY 40, ¶ 15, 482 P.3d 353, 358 (Wyo. 2021) (quoting *Four B Properties, LLC v. Nature Conservancy*, 2020 WY 24, ¶ 69, 458 P.3d 832, 849 (Wyo. 2020)).

[¶15] Mr. Rogers did not make any of the arguments he raises here to the district court. Mr. Rogers' claims—that the amendment: was untimely, charged a new offense, was illegal without preliminary hearing, and substantially prejudiced his rights—are not jurisdictional. Mr. Rogers does not argue that these are issues of "a fundamental nature" and, because these issues have not been properly developed for review, we do not address them. *Davis*, ¶ 34, 415 P.3d at 678 (noting the Court will not consider a new issue on appeal where it is not properly developed for review). *See also Kitzke v. State*, 2004 WY 9, ¶ 13, 84 P.3d 950, 953 (Wyo. 2004) ("issues not brought before the district court may not be reviewed by this court upon first impression on appeal"); *Jones v. State*, 2006 WY 40, ¶ 8, 132 P.3d 162, 165 (Wyo. 2006) (declining to hear constitutional challenge to a statute raised for the first time on appeal).

## II. Was Mr. Rogers deprived of his right to a speedy trial?

[¶16] Mr. Rogers argues that he did not receive a speedy trial as required by W.R.Cr.P. 48 and the Constitution.

### A. Standard of Review

[¶17] We review Rule 48 and constitutional speedy trial claims de novo. *Castellanos v. State*, 2016 WY 11, ¶ 48, 366 P.3d 1279, 1294 (Wyo. 2016).

### B. Wyoming Rule of Criminal Procedure 48

[¶18] We first address Mr. Rogers' argument that his trial date violated his right to a speedy trial under Rule 48. Rule 48 requires that a trial begin within 180 days of arraignment "unless continued as provided in this rule." W.R.Cr.P. 48(b)(2). Mr. Rogers was arraigned on November 15, 2019. His speedy trial clock started on that date and was set to expire May 13, 2020. Without question, his August 3, 2020 trial began after the

---

[6] "Wyoming Rule of Criminal Procedure 3(e) gives discretion to a trial judge in deciding whether a motion to amend an information should be granted." *LaJeunesse v. State*, 2020 WY 29, ¶ 28, 458 P.3d 1213, 1222 (Wyo. 2020) (citing *Albarran v. State*, 2013 WY 111, ¶ 11, 309 P.3d 817, 820 (Wyo. 2013)). Thus, decisions allowing the amendment of an information are reviewed for an abuse of discretion.

clock had run if no exception applies. Rule 48 allows the trial court to continue the trial beyond the 180-day speedy trial deadline under certain circumstances:

> (4)     Continuances exceeding 180 days from the date of arraignment may be granted by the trial court as follows:
>
>> (A)     On motion of defendant; or
>>
>> (B)     **On motion of the attorney for the state or the court if:**
>>
>>> (i)     **The defendant expressly consents**;
>>>
>>> (ii)     The state's evidence is unavailable and the prosecution has exercised due diligence; or
>>>
>>> (iii)     **Required in the due administration of justice and the defendant will not be substantially prejudiced**; and
>>
>> (C)     If a continuance is proposed by the state or the court, the defendant shall be notified. If the defendant objects, the defendant must show in writing how the delay may prejudice the defense.

W.R.Cr.P. 48(b)(4) (emphasis added).

[¶19]  In compliance with Rule 48(b)(4)(C), the district court notified the parties that it proposed continuing Mr. Rogers' May 5, 2020 trial beyond the 180-day speedy trial deadline because of the worsening pandemic. It provided Mr. Rogers the opportunity to object in writing, which he did. Mr. Rogers argued that the pandemic was not a sufficient reason to delay trial beyond the 180-day speedy trial deadline. He asserted that the COVID-19 Restriction Order carved speedy trial rights out of "good cause" continuances due to the COVID-19 emergency. However, at the May 4, 2020 hearing on the matter, Mr. Rogers' attorney stated,

> Specifically given the pandemic, it has limited my in-office hours. It has really limited my ability to communicate with [Mr. Rogers], telephonically, as well as in person.
>
> Under all of those circumstances, Your Honor, I have spoken with Mr. Rogers at length about what the notice is, what a continuance beyond the 180 days means, the legal

7

parameters for it, and I believe Mr. Rogers is in a position to acknowledge that, given the pandemic and the corresponding effect that has had on our ability to communicate, it has hindered our ability to adequately prepare his case at this time.

As such, Your Honor, **I believe that this matter can be continued past the 180 days, as I think that there is good cause in order to do so** and that **that can be done without Mr. Rogers waiving his right to speedy trial**. . . . The Supreme Court issued its order on the COVID for a reason, and I believe the circumstances unique to this case that have been manifested not only by the pandemic, but the corresponding effect that has had on the ability of the Defense to communicate with each other, reaches that good-cause threshold such that this could be pushed past the 180 days without Mr. Rogers waiving his right to speedy trial.

And to that end, Your Honor, **the Defense would not object to the Court issuing such an order, mindful of the fact that Mr. Rogers is not waiving his right to speedy trial**.

(Emphasis added.)

[¶20] The State interprets this colloquy as Mr. Rogers' consent to the continuance satisfying Rule 48(b)(4)(B)(i) which allows a court to continue trial beyond the 180-day limit if "[t]he defendant expressly consents." While Mr. Rogers statements could be construed as consent to a continuance under Rule 48(b)(4)(B)(i), there is no question that he conceded a continuance was justified under Rule 48(b)(4)(B)(iii). Concurrent with this concession, Mr. Rogers preserved his right to a speedy trial. *See Webb v. State*, 2017 WY 108, ¶¶ 8–27, 401 P.3d 914, 920–25 (Wyo. 2017) (discussing the right to a speedy trial under Rule 48 and the Sixth Amendment to the U.S. Constitution); *Castellanos*, ¶¶ 49–51, 69, 366 P.3d at 1294–95, 99 (same).

[¶21] The applicable Rule 48 provision is Rule 48(b)(4)(B)(iii): "Continuances exceeding 180 days from the date of arraignment may be granted . . . [o]n motion of . . . the court if . . . [r]equired in the due administration of justice and the defendant will not be substantially prejudiced[.]" W.R.Cr.P. 48(b)(4)(B)(iii).

[¶22] The district court notified Mr. Rogers that it proposed continuing the trial beyond the 180-day speedy trial deadline under Rule 48(b)(4)(B)(iii) because of the worsening pandemic. At the May 4 hearing on Mr. Rogers' objection to a continuance, Mr. Rogers

8

expressly conceded that there was good cause to continue the hearing when his attorney stated, "this matter can be continued past the 180 days, as I think that there is good cause in order to do so." Mr. Rogers also acknowledged that he would not suffer prejudice and in fact his defense might benefit from the delay by stating: "I believe Mr. Rogers is in a position to acknowledge that, given the pandemic and the corresponding effect that has had on our ability to communicate, it has hindered our ability to adequately prepare his case at this time."

[¶23] After finding that the due administration of justice required a continuance beyond 180 days, the court set the trial for July 14, 2020, which date it made clear was unsettled given the uncertainties of the pandemic.

[¶24] On May 15, 2020, the COVID-19 Restriction Order was updated, recommending no jury trials take place until August 3, 2020, and on June 5, 2020, the district court continued the trial from July 14, 2020, to August 3, 2020. Mr. Rogers did not object and consent remained in effect. Trial commenced on August 3, 2020. Delays necessitated under Rule 48(b)(4)(B)(iii) do not count in the speedy trial calculation. *Mathewson v. State*, 2019 WY 36, ¶ 53, 438 P.3d 189, 208–09 (Wyo. 2019) (the time during which the defendant consented to a continuance does not count as delay in speedy trial calculation). The continuances in Mr. Rogers' trial complied with Rule 48, these delays do not count in the 180-day calculation, and Mr. Rogers received a speedy trial under the rule.

[¶25] We turn next to the question of whether Mr. Rogers' constitutional right to a speedy trial was violated by the delay.

## C.      Constitutional Right to Speedy Trial

[¶26] The Sixth Amendment guarantees every criminal defendant a speedy trial. U.S. Const. amend. VI; *Castellanos*, ¶ 69, 366 P.3d at 1299. At the hearing, Mr. Rogers' attorney made clear that by consenting to the continuance, Mr. Rogers was not waiving his right to a speedy trial. *Supra* ¶ 19.

> In evaluating a constitutional speedy trial claim, we adhere to the test enunciated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Cosco v. State*, 503 P.2d 1403 (Wyo. 1972). Under that test, we consider four factors in determining whether a speedy trial violation has occurred: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant. *Harvey v. State*, 774 P.2d 87, 92 (Wyo. 1989), citing *Barker*. These factors must be considered together and balanced in relation to all relevant circumstances. *Id.*

9

*Berry v. State*, 2004 WY 81, ¶ 31, 93 P.3d 222, 230–31 (Wyo. 2004). "No individual factor is dispositive. The ultimate 'inquiry is whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial.'" *Castellanos*, ¶ 69, 366 P.3d at 1299 (quoting *Ortiz v. State*, 2014 WY 60, ¶ 39, 326 P.3d 883, 893 (Wyo. 2014)) (internal citations omitted).

[¶27] The first factor, the length of the delay,

> is a threshold factor that will determine whether further analysis of the remaining *Barker* factors is necessary. *See Tate v. State*, 2016 WY 102, ¶ 26, 382 P.3d 762, 768 (Wyo. 2016). Delays approaching one year will generally trigger consideration of all of the speedy trial factors. *Id.* ¶ 29, 382 P.3d at 769.

*Webb*, ¶ 16, 401 P.3d at 922. Here, the time between Mr. Rogers' arrest and the end of his trial, including the period of his consent, was 295 days. This delay falls well short of one year and does not trigger analysis of the remaining *Barker* factors. Mr. Rogers' trial continuance did not violate his constitutional right to a fair trial.

### *CONCLUSION*

[¶28] We do not address Mr. Rogers' arguments that the district court abused its discretion in granting the State's motion to amend the information as they were not raised below. Mr. Rogers was not deprived of his right to a speedy trial. We affirm.