# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 62

### APRIL TERM, A.D. 2022

### May 23, 2022

BRIAN NEAL GILBERT,

Appellant
(Defendant),

v.

S-21-0193

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
The Honorable Kerri M. Johnson, Judge

*Representing Appellant:*

Office of the State Public Defender:  Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; H. Michael Bennett, Senior Assistant Appellate Counsel; Patricia L. Bennett, Senior Assistant Public Defender.  Argument by Ms. Bennett.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Senior Assistant Attorney General.  Argument by Mr. Zintak.

*Before FOX, C.J., KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   Brian Neal Gilbert was convicted by a jury of various methamphetamine-related offenses and sentenced to 4-8 years in prison.  He maintains the trial judge should have recused herself from presiding over the case because she represented him in similar criminal matters before she was appointed as a judge.  He also argues the district court abused its discretion by denying his motion in limine seeking to admit evidence under Wyoming Rule of Evidence (W.R.E.) 608(b).  We affirm.

## ISSUES

[¶2]   Mr. Gilbert raises two issues which we reorder and restate as follows:

> 1.     Did the district judge err by failing to recuse herself because she previously represented him when she served as a state public defender?

> 2.     Did the district court abuse its discretion by denying his motion in limine to admit W.R.E. 608(b) evidence?

## FACTS

[¶3]   In November 2019, Michael Barney was released from prison and began selling methamphetamine in Natrona County.  Brianna Reed sold methamphetamine for Mr. Barney.  Mr. Barney gave her $20 for every "ball" or "eight ball" (3.5 grams) she sold; she used the money to finance her personal drug use.

[¶4]   Around Thanksgiving 2019, Mr. Barney and Mr. Gilbert picked up Ms. Reed in Casper and traveled to Thornton, Colorado, where Mr. Barney and Mr. Gilbert planned to each obtain two pounds of methamphetamine.  Once in Colorado, Mr. Barney, Mr. Gilbert, and Ms. Reed picked up Destiny Sullivan and her boyfriend and drove to a hotel in Thornton, where they met with Ms. Sullivan's drug source.  The source informed Mr. Barney and Mr. Gilbert only two pounds of methamphetamine were available for purchase. Mr. Gilbert and Mr. Barney each paid the source for one pound of methamphetamine and left.  On their trip back to Casper, Mr. Barney, Mr. Gilbert, and Ms. Reed stopped at a house in Glenrock.  Mr. Gilbert went into the house with his pound of methamphetamine, made a sale, and returned to the car.  Mr. Barney and Ms. Reed dropped Mr. Gilbert off at a house in Evansville; Mr. Gilbert took his drugs with him.  Mr. Barney and Ms. Reed proceeded to another house in the area, where Mr. Barney made a $1,000 drug sale.  Mr. Barney gave Ms. Reed a "ball" of methamphetamine for going on the trip.

[¶5]   A month later, on December 29, 2019, officers from the Casper Police Department arrested Ms. Reed for shoplifting from Menards.  To avoid going to jail, Ms. Reed agreed to speak with Special Agent Brad Reinhart of the Wyoming Division of Criminal

1

Investigation (DCI) and Special Agent Adam Uhrich, a task force officer from the Casper Police Department. During her recorded interview with the agents, Ms. Reed identified numerous individuals involved in the methamphetamine trade in the Casper area, including Mr. Barney. She also recounted the trip she took with Mr. Barney and Mr. Gilbert to Colorado in November 2019. As a result of her cooperation, Ms. Reed was cited for shoplifting and allowed to go home. She eventually pled guilty to the offense and was fined.

[¶6]   On January 23, 2020, Mr. Barney was involved in a car accident while driving south on Highway 287 in Carbon County, Wyoming. A search of his vehicle revealed over 45 grams of methamphetamine and various drug paraphernalia including baggies, two digital scales, calibration weights, and spoons. Mr. Barney had over $2,500 in cash on his person.

[¶7]   Later that day, Ms. Reed learned of Mr. Barney's accident and arrest via Facebook. Ms. Reed called Ms. Sullivan to relay the news. Ms. Sullivan was not aware of the accident or arrest but told Ms. Reed that Mr. Barney had been traveling to Colorado to obtain more methamphetamine from her at the time of the accident. She said Mr. Gilbert was also on his way to Colorado to obtain methamphetamine from her but was traveling in a separate vehicle. After Mr. Gilbert left Colorado, Ms. Sullivan called Ms. Reed and told her she had sold drugs to Mr. Gilbert. Ms. Reed was eventually arrested on various drug charges. She gave a proffer statement on August 24, 2020, where she again recounted the November 2019 trip to Colorado.

[¶8]   On March 1, 2020, Sergeant Matt Vincent with the Mills Police Department observed Mr. Gilbert driving. He knew Mr. Gilbert had an outstanding traffic warrant and was driving with a suspended license. Sergeant Vincent followed Mr. Gilbert, who pulled into a parking spot in front of a trailer home. Sergeant Vincent approached the vehicle, asked Mr. Gilbert to exit the vehicle, and patted Mr. Gilbert down before placing him in the patrol car. The pat-down search revealed a pipe with methamphetamine residue in Mr. Gilbert's front pants pocket and $570 in cash. Upon the discovery of the pipe, Mr. Gilbert said, "After all this time, you finally got me." Sergeant Vincent, accompanied by another officer, searched Mr. Gilbert's vehicle. They found a baggy containing 32.182 grams of methamphetamine in the back of the vehicle. Mr. Gilbert stated the methamphetamine "was not his, but he wished it was." Sergeant Vincent transported Mr. Gilbert to the jail. Before doing so, he talked with an agent from DCI, who told him about Agent Reinhart's investigation. As a result of obtaining this information, Sergeant Vincent asked Mr. Gilbert if he knew Ms. Sullivan and Mr. Barney. Mr. Gilbert responded, "Yes, so what of it[?]"

[¶9]   The State charged Mr. Gilbert with conspiracy to deliver methamphetamine from on or about November 25, 2019, to on or about March 15, 2020, in violation of Wyo. Stat. Ann. §§ 35-7-1031(a)(i) and 35-7-1042 (LexisNexis 2021) (Count 1); possession with intent to deliver methamphetamine on or about March 1, 2020, in violation of § 35-7-1031(a)(i) (Count 2); possession of methamphetamine on or about March 1, 2020, in an

2

amount exceeding three grams in violation of § 35-7-1031(c)(ii) (Count 3); and possession of a controlled substance (methamphetamine residue in a pipe) on or about March 1, 2020, as a third or subsequent offense in violation of § 35-7-1031(c)(i) (Count 4). The jury found Mr. Gilbert guilty of all four counts. The district court merged Counts 2 and 3 for sentencing and sentenced Mr. Gilbert to a total sentence of 4-8 years in prison.

[¶10] We will address other pertinent facts in our discussion of the issues.

## DISCUSSION

### A. *Motion to Disqualify*

[¶11] Mr. Gilbert's criminal case was assigned to the Honorable Kerri M. Johnson. Despite being represented by appointed counsel, Mr. Gilbert submitted pro se motions. Judge Johnson refused to consider these motions because he was represented by counsel. Defense counsel eventually moved to withdraw. Judge Johnson granted the motion to withdraw and, upon his request, allowed Mr. Gilbert to proceed pro se.

[¶12] While pro se, Mr. Gilbert filed various motions, including a motion to suppress evidence and a motion to dismiss. At the hearing on his motion to dismiss, he orally moved for a "change of venue" because he claimed Judge Johnson had a conflict of interest as she had previously represented him "in two drug cases just like this one where I was not in possession of the drugs and it was found in a vehicle. [She] got me off on two of those charges." Judge Johnson did not address this "motion" or her alleged prior representation of Mr. Gilbert at this hearing.

[¶13] Mr. Gilbert followed up his oral motion with a written "Motion for Change of Venue." He stated Judge Johnson had been his defense attorney when she worked as a state public defender and "[t]he case she defended me on was exactly the same circumstances as this case where drugs were found but not within my possession[.] She got the judge to drop charges at the preliminary [hearing] because the drugs were not in my possession." He argued these facts "alone [were] enough to constitute a conflict of interest" but also claimed Judge Johnson had violated his right to due process by (1) not allowing him to file motions; (2) refusing him access to an investigator's services, thereby preventing him from interviewing witnesses and gathering evidence; (3) failing to require the State to respond to his demands for withheld evidence; (4) refusing to hear his arguments regarding his motion to suppress, instead informing him "that you must object to the evidence as it comes up at trial"; and (5) being biased against him "to the level of malice or even vindictiveness." Judge Johnson assigned the case to the Honorable Catherine E. Wilking for the limited purpose of deciding Mr. Gilbert's "Motion for Change of Venue."

3

[¶14] Judge Wilking held a hearing on the motion. At the hearing, Mr. Gilbert clarified that his motion for change of venue was really a motion for a change of judge. As a result, Judge Wilking construed it as a motion to disqualify Judge Johnson for cause under Wyoming Rule of Criminal Procedure (W.R.Cr.P.) 21.1. Judge Wilking denied the motion. She noted Mr. Gilbert had not complied with W.R.Cr.P. 21.1 because he failed to support his motion with affidavits. She also determined he had not established Judge Johnson was biased or prejudiced against him as required by the rule.

[¶15] We review the denial of a motion to disqualify a judge for an abuse of discretion. *Royball v. State*, 2009 WY 79, ¶ 12, 210 P.3d 1073, 1076 (Wyo. 2009) (citing *Pote v. State*, 695 P.2d 617, 632 (Wyo. 1985)). "An abuse of discretion occurs when the deciding court could not have reasonably concluded as it did." *Id.* (citing *Young v. State*, 2005 WY 136, ¶ 9, 121 P.3d 145, 147 (Wyo. 2005)).

[¶16] W.R.Cr.P. 21.1(b) states:

> (b) *Disqualification for Cause*. – Promptly after the grounds for such motion become known, the state or the defendant may move for a change of judge on the ground that the presiding judge is biased or prejudiced against the state, the attorney for the state, the defendant or the defendant's attorney. The motion shall be supported by affidavits stating sufficient facts to demonstrate such bias or prejudice. Prior to a hearing on the motion other affidavits may be filed. The motion shall be referred to another judge, or a court commissioner, who shall rule on the motion, and if granted shall immediately assign the case to a judge other than the disqualified judge. A ruling on a motion for a change of judge is not an appealable order, but the ruling shall be made a part of the record, and may be assigned as error in an appeal of the case or on a bill of exceptions.

"This rule 'does not confer upon appellant the right to disqualify successive judges until he finds one that will grant his motions.' . . . Rather, the 'rule requires that [the] appellant state facts that would convince a reasonable person with knowledge of all the facts that the judge harbors a personal bias or prejudice against appellant.'" *DeLoge v. State*, 2007 WY 71, ¶ 10, 156 P.3d 1004, 1008 (Wyo. 2007) (quoting *Story v. State*, 788 P.2d 617, 621 (Wyo. 1990)). *See also, In re Guardianship of Bratton*, 2014 WY 87, ¶ 34, 330 P.3d 248, 255 (Wyo. 2014) ("A party seeking to disqualify a judge for cause is required to present convincing evidence that the judge harbored such a personal prejudice or bias against him that he or she was unable to impartially base decisions on the law and the evidence." (citing *TZ Land & Cattle Co. v. Condict*, 795 P.2d 1204, 1211 (Wyo. 1990)).

4

"[B]ias is a leaning of the mind or an inclination toward one person over another. The bias which is a ground for disqualification of a judge must be personal, and it must be such a condition of the mind which sways judgment and renders the judge unable to exercise his functions impartially in a given case or which is inconsistent with a state of mind fully open to the conviction which evidence might produce."

*DeLoge*, ¶ 12, 156 P.3d at 1008 (quoting *Hopkinson v. State*, 679 P.2d 1008, 1031 (Wyo. 1984)).  *See also, Pote v. State*, 733 P.2d 1018, 1021 (Wyo. 1987) ("The 'bias' which is a ground for disqualification of a judge must be personal.  Such conditions must exist which reflect prejudgment of the case by the judge or a leaning of his mind in favor of one party to the extent that his decision in the matter is based on grounds other than the evidence placed before him." (citing *Cline v. Sawyer*, 600 P.2d 725 (Wyo. 1979)).  "Judicial prejudice involves a prejudgment or the forming of an opinion without sufficient knowledge or examination." *DeLoge*, ¶ 12, 156 P.3d at 1008 (citing *Reichert v. State*, 2006 WY 62, ¶ 37, 134 P.3d 268, 278 (Wyo. 2006)).

[¶17]  Judge Wilking did not abuse her discretion in denying Mr. Gilbert's motion for change of judge.  The motion was not supported by affidavits as required by W.R.Cr.P. 21.1(b). *Pearson v. State*, 866 P.2d 1297, 1300 (Wyo. 1994) ("A mere allegation of judicial bias is insufficient to form a basis for disqualification. . . .  Sufficient facts showing bias must be presented in the affidavit supporting the motion."  (citations omitted)). *See also, Cauthon v. Rogers*, 116 F.3d 1334, 1336 (10th Cir. 1997) ("Because the motion was not supported by an affidavit, Cauthon failed to show bias or prejudice under 28 U.S.C. § 144.").[1]  He also failed to present convincing evidence that Judge Johnson's previous

---

[1] 28 U.S.C. § 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

W.R.Cr.P. 21.1(b) is patterned after 28 U.S.C. § 144.  *Hopkinson*, 679 P.2d at 1031.  As a result, federal cases interpreting 28 U.S.C. § 144 are highly persuasive in our interpretation of W.R.Cr.P. 21.1. *Cf. Gunsch v. State*, 2019 WY 79, ¶ 15 n.4, 444 P.3d 1278, 1282 n.4 (Wyo. 2019) ("Because the Wyoming Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, federal court interpretations of their rules are highly persuasive in our interpretation of the corresponding Wyoming rules.") (citations and internal quotations omitted).

representation of him caused her to harbor such a personal bias or prejudice against him that she was unable to impartially base her decisions on the law and the evidence.

[¶18]  "A judge's prior representation of a litigant generally does not require the judge's recusal." *See United States v. Davis*, 801 F. App'x 75, 78 (4th Cir. 2020). *See also, United States v. Stringer*, 221 F.3d 1354, No. 98-4203, 2000 WL 1059336, *2 (10th Cir. Aug. 2, 2000) ("The trial judge's former prosecution of Defendant for default on his student loan does not require automatic disqualification.  . . .  Furthermore, nothing in the record suggests that the judge even remembered the former prosecution, much less that he was biased against Defendant because of their former interaction.") (citations omitted).  Mr. Gilbert provided no evidence that Judge Johnson had any personal knowledge of the current proceedings against him based on her prior representation of him.  Nor did he present any evidence that her prior representation of him caused her to harbor any personal bias or prejudice against him.  Indeed, he did not provide any information about those prior proceedings other than that she had obtained a favorable outcome for him and his personal opinion they were similar to his current case because "drugs were found in a vehicle and he was not in possession of them."  His motion to disqualify Judge Johnson relied mainly on the fact she had ruled against him on various pretrial matters, which is an insufficient basis for disqualification.  *Burk v. State*, 848 P.2d 225, 236 (Wyo. 1993) ("Bias and prejudice cannot be presumed from unfavorable rulings in the past." (quoting *TZ Land & Cattle Co.*, 795 P.2d at 1211).  *See also, Brown v. Avery*, 850 P.2d 612, 616-617 (Wyo. 1993) ("To demonstrate judicial bias, or prejudice, an appellant must show more than the fact that the trial court ruled against him, correctly or incorrectly, on a particular matter.  If the mere showing of an unfavorable ruling sufficed to establish bias, disputes seldom would be resolved by a single judge.").

[¶19]  Mr. Gilbert does not claim on appeal that Judge Wilking abused her discretion in concluding he failed to show Judge Johnson was biased or prejudiced against him.  Instead, he claims Judge Johnson erred in not recusing herself from his case under Rule 2.11(A)(1) of the Code of Judicial Conduct because she previously represented him in a  similar matter and under Rule 1.9(c) of the Wyoming Rules of Professional Conduct for Attorneys at Law (W.R.P.C.) because she was privy to confidential information as a result of their prior attorney-client relationship.  While he acknowledges neither rule explicitly requires a judge to recuse herself if she previously represented the defendant, he claims it is the appearance of impropriety, along with Mr. Gilbert's and the public's interest in an unbiased neutral judiciary, which control.

[¶20]  Rule 2.11(A)(1) of the Code of Judicial Conduct requires a judge to disqualify herself "in any proceeding in which the judge's impartiality[] might reasonably be questioned, including but not limited to [when] . . . [t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge[] of facts that are

in dispute in the proceeding." Comments 1 and 2 to the rule state: "Under this Rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless of whether any of the specific provisions of paragraphs (A)(1) through (5) apply . . . . A judge's obligation not to hear or decide matters in which disqualification is required applies regardless of whether a motion to disqualify is filed." W.R.P.C. 1.9(c) prohibits "[a] lawyer who has formerly represented a client in a matter" from "us[ing] confidential information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known" or "reveal[ing] confidential information relating to the representation except as these Rules would permit or require with respect to a client."

[¶21] Mr. Gilbert's reliance on these rules is misplaced for two reasons. First, as stated above, there is no evidence Judge Johnson harbored a personal bias or prejudice against Mr. Gilbert, had personal knowledge of the facts in dispute in this proceeding, or used or revealed confidential information she obtained in her prior representation of Mr. Gilbert. Second, a motion for a change of judge is controlled by W.R.Cr.P. 21.1, not the Code of Judicial Ethics or the W.R.P.C. *See Royball*, ¶ 11, 210 P.3d at 1076 ("Motions to disqualify a judge based upon bias or prejudice are governed by W.R.Cr.P. 21.1(b)[.]"); *DeLoge*, ¶ 10, 156 P.3d at 1007 (same). Although we have "the authority and responsibility, if the circumstances warrant, to discipline a judicial officer or an attorney without reference to the Commission on Judicial Conduct and Ethics (CJCE) or the Board of Professional Responsibility (BPR)," respectively, a claim that a judge violated the Code or W.R.P.C. is "a task that is generally assigned" to the CJCE and BPR. *Seid v. Seid*, 2001 WY 137, ¶ 13, 36 P.3d 1167, 1175-76 (Wyo. 2001). *See also, Castellow v. Pettengill*, 2021 WY 88, ¶ 26, 492 P.3d 894, 903 (Wyo. 2021) (Kautz, J., specially concurring) ("The Wyoming judicial branch capably polices itself, preserving accountability of judges and separation of powers. *This accountability is provided through the Wyoming Commission on Judicial Conduct and Ethics*. The Commission reviews whether a judge has violated one or more portions of the Code, either on the basis of a complaint or on its own motion." (emphasis added)).

[¶22] The Code of Judicial Conduct and the W.R.P.C. are intended to provide guidance for the ethical conduct of judges and attorneys and to serve as bases for discipline, not as grounds for a change of judge in a legal proceeding. Relevant here, the Preamble to the Code states: "The Code is intended . . . to provide guidance and assist judges in maintaining the highest standards of judicial and personal conduct, and to provide a basis for regulating their conduct through disciplinary agencies." W.C.J.C., Preamble (emphasis added). Similarly, the "Scope" of the W.R.P.C. provides in pertinent part:

> [20] Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. *In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in*

7

*pending litigation. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability.* Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. *The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Nevertheless, since the Rules do establish standards of conduct by lawyers, the Rules may be evidence of the applicable standard of conduct.*

W.R.P.C., Scope, ¶¶ 19-20 (Emphasis added).

[¶23] Mr. Gilbert does not cite any cases holding a motion to disqualify a judge is controlled by the Code of Judicial Conduct or the W.R.P.C. Our own research reveals only one case where we have indicated that a motion for change of judge might be governed by the Code of Judicial Conduct.

[¶24] In *Matter of Farman*, 841 P.2d 99, 100 (Wyo. 1992), Mr. Farman was involved in a car accident with another vehicle while, he claimed, he was traveling to his employer's worksite. He filed suit against the driver of the other vehicle and submitted a claim for worker's compensation benefits. *Id*. at 100-01. After a trial against the other driver, he was awarded $24,000. *Id*. at 101. His worker's compensation claim was denied by a hearing officer, and he appealed to the district court. *Id*. During his appeal to the district court, Mr. Farman filed a motion for a change of judge because he claimed to have heard that the trial judge had criticized the amount he received from the other driver as too high. *Id*. Mr. Farman argued, as a result of this statement, he could not obtain a fair and impartial hearing from the judge on his worker's compensation appeal. *Id*. The judge denied the motion and affirmed the hearing officer's decision. *Id*. On appeal to this Court, Mr. Farman argued the district judge erred by not recusing himself. *Id*. We stated: "In considering [Mr. Farman's] motion to disqualify him, the district judge was governed by W.R.C.P. 40.1(b)(2) [now codified at W.R.Cr.P. 21.1] and Canons 2 and 3 of the Wyoming Code of Judicial Conduct." *Id*. Although we mentioned the Code of Judicial Conduct, we ultimately decided Mr. Farman's affidavit in support of his motion for change of judge had not presented sufficient facts showing the judge was biased or prejudiced against him under Rule 40.1(b)(2). *Id*. at 101-02. Instead, his affidavit consisted entirely of uncorroborated hearsay. *Id*. at 102.

[¶25] A motion for change of judge in a criminal proceeding is controlled by W.R.Cr.P. 21.1, not the Code of Judicial Ethics or W.R.P.C. Because Mr. Gilbert failed to show via

affidavit that Judge Johnson was biased or prejudiced against him, Judge Wilking did not abuse her discretion in denying his motion for change of judge.

### W.R.E. 608(b)

[¶26] Prior to trial, while represented by counsel, Mr. Gilbert filed a motion in limine to admit evidence under W.R.E. 608(b), which states:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

He claimed that during her recorded interview with Agents Reinhart and Uhrich, Ms. Reed admitted to various criminal acts. He sought an order from the court allowing him to impeach Ms. Reed with these criminal acts because they were probative of her truthfulness. He stated he would not seek to introduce extrinsic evidence of the criminal acts but simply inquire about them on cross-examination. Mr. Gilbert did not specify in his motion the criminal acts to which he was referring. Due to this failure, the State submitted a generic response. It simply stated instances of conduct admitted pursuant to W.R.E. 608(b) must not be proven by extrinsic evidence and must relate to the witness's truthfulness or untruthfulness and not bias. It also claimed that even if the evidence fell within the scope of W.R.E. 608(b), it could still be excluded under W.R.E. 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[¶27] The district court held a hearing on the motion. At the hearing, Mr. Gilbert again did not describe the acts he sought to admit under W.R.E. 608(b), other than to say they were criminal. He also did not offer into evidence Ms. Reed's recorded interview. The State argued against granting the motion in limine, believing Mr. Gilbert was referring to the actions Ms. Reed took in furtherance of the conspiracy and her own drug use. While it argued those acts were relevant and admissible, it claimed they were not within the scope of W.R.E. 608(b). In response, Mr. Gilbert clarified Ms. Reed's conviction for her role in the conspiracy was not part of his motion and "any convictions that she has is not part of this motion because that falls under [W.R.E.] 609." The court denied the motion without prejudice, explaining:

9

Thank you. Well, without knowing what evidence it is at this point, it's difficult for . . the Court to make a ruling on this. I looked at *Lawrence versus State*. In that case, they were talking about a distinction between the evidence which impeaches by proof of a witness's character or disposition for veracity, or the lack thereof, and the evidence which establishes a lack of credibility through a showing of such things as bias or undue influence. And they say in that particular case that the admission of the evidence for the purpose of bias or undue influence is not controlled by 608(b). Those . . . rules that govern that admission are 402 and 403.

So I don't think 608 is the proper rule in this case for any evidence that [Mr. Gilbert] may be seeking to introduce. So I'm going to deny the motion without prejudice . . . to Mr. [Gilbert] . . . hav[ing] the Court reconsider [at trial] . . . this ruling under another rule. But until I hear the question, until I hear what evidence it is, I can't rule on that at this time, so I'm just going to generally deny it.

Mr. [Gilbert], certainly at trial, you can request a reconsideration of that ruling, and I will take it up at that time.

[¶28]   Thereafter, the State filed a motion in limine under W.R.E. 609 seeking to prohibit Mr. Gilbert from impeaching Ms. Reed with her prior misdemeanor theft and shoplifting convictions and her prior misdemeanor conviction for false reporting.   W.R.E. 609 provides in relevant part:  "For the purpose of attacking the credibility of a witness, . . . . evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment."   The State described Ms. Reed's theft and shoplifting convictions as follows:

- a theft conviction for less than $50 in Colorado on May 8, 2019;
- a shoplifting [offense] for $50 that occurred on July 25, 2019, with a conviction on September 12, 2019;
- a shoplifting at Menard's for $62.14, which [Ms. Reed] later pled guilty to in Municipal Court.  The event took place on December 29, 2019; and
- a shoplifting at Sportsman's Warehouse which occurred on July 13, 2020, and which [Ms. Reed] pleaded guilty to on August 4, 2020.

[¶29] The State maintained these convictions were not admissible under W.R.E. 609 because theft and shoplifting are not crimes of dishonesty. With respect to the prior misdemeanor false reporting conviction, the State essentially admitted that, on its face, it was a crime of dishonesty under Rule 609. However, it argued its probative value was substantially outweighed by the danger of unfair prejudice under W.R.E. 403 because (1) Ms. Reed was only a minor at the time she pleaded guilty to the offense, (2) she was not represented by counsel, and (3) the police officer's narrative report of the incident demonstrated Ms. Reed was improperly charged with false reporting when she should have been charged with interference with a police officer. According to the officer's report, FM, a friend of Ms. Reed's, called the police and reported her car had been stolen and crashed into a fence. Upon arriving at the crash site, the officer asked FM, in Ms. Reed's presence, whether she had crashed the car. FM denied it and Ms. Reed "did not state anything about what had happened, nor did she attempt to get my attention about the incident." After FM admitted she crashed the car and reported it stolen to avoid getting in trouble, the officer spoke with Ms. Reed and explained she had not been truthful and was facing criminal charges for not being honest. Ms. Reed then admitted FM had been driving the vehicle, lost control of it, and drove it into the fence. According to the officer's report, "[he] then explained to [Ms. Reed] that she had an obligation to tell the truth regarding the incident, however she never said a word, nor did she attempt to tell the truth. [He] advised [Ms. Reed] that she would be receiving a citation for interference with a peace officer through Natrona County Circuit Court."

[¶30] The district court held a hearing on the State's motion in limine. At the hearing, the State agreed Mr. Gilbert could question Ms. Reed about the December 29, 2019, shoplifting incident because she avoided going to jail for the incident by talking with the agents about Mr. Gilbert's drug activities. It argued, however, that the remaining shoplifting and theft offenses were not crimes of dishonesty under W.R.E. 609 and cited federal case law to that effect. The State again acknowledged that, on its face, false reporting may constitute a crime of dishonesty, but maintained W.R.E. 403 still applied and any probative value of the false reporting offense was substantially outweighed by the danger of unfair prejudice because the underlying facts of the offense demonstrated Ms. Reed had been wrongly charged and her conduct did not constitute a crime of dishonesty.

[¶31] Mr. Gilbert argued theft and shoplifting are crimes of dishonesty under W.R.E. 609 because "it's a false statement to walk out of a store or take something that doesn't belong to you and walk away with it. That is an assertion of ownership, that is a statement, and it's a false statement." Even if her theft and shoplifting convictions were not automatically admissible under W.R.E. 609, he claimed, "it is possible to shoplift through a false statement" and he should be allowed to voir dire Ms. Reed to determine whether any of her shoplifting and theft convictions involved her making a false statement. With respect to the false reporting conviction, he argued the State could not look to the underlying circumstances or argue she was wrongfully charged because it is the fact of conviction which is admissible under W.R.E. 609. He also argued W.R.E. 403 balancing does not

11

apply to W.R.E. 609. At the conclusion of his argument, Mr. Gilbert informed the court that Ms. Reed had also admitted to car thefts during her interview with the agents and those thefts were relevant to his prior motion in limine under W.R.E. 608(b). He noted though that the court had "told [him] to bring it up during trial and [it] would rule on it then."

[¶32] The district court denied the State's W.R.E. 609 motion in limine with respect to the December 29, 2019, shoplifting offense but granted it with respect to the remaining shoplifting, theft, and false reporting convictions. It concluded that to be admissible under W.R.E. 609, a conviction must involve some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify untruthfully. It decided shoplifting and theft do not per se constitute crimes of dishonesty under Rule 609. While federal case law indicated a court can look beyond the elements of an offense to determine if a particular conviction involved dishonesty or a false statement, the court could not make that determination with respect to Ms. Reed's theft and shoplifting offenses because it did not know the circumstances underlying those offenses. The trial judge ruled: "If there's more information presented to the Court regarding circumstances surrounding these other thefts, I may revisit that and determine whether or not they would fall under [W.R.E. 609]; but right now, what's in front of me, I would find that they don't." With respect to the false reporting conviction, the court found the underlying facts did not suggest dishonesty and the conviction was remote in time. It also voiced concern over "end[ing] up in a situation where we're fighting over a false reporting and whether or not she lied or didn't lie." With respect to Ms. Reed's admission to any car thefts and Mr. Gilbert's Rule 608(b) motion in limine, the court again deferred ruling on the issue until Ms. Reed's testimony "[i]f it comes up[.]"

[¶33] At trial, Mr. Gilbert elicited testimony from Ms. Reed that in May 2018 she and her ex-boyfriend had stolen a car in Casper and traveled to Colorado. He also asked her about another car theft that "occurred in Casper." Ms. Reed stated it occurred in Timnath, Colorado. At this point the State objected because the evidence was irrelevant and the charge had been dismissed for lack of evidence. At a side bar, Mr. Gilbert claimed the evidence was admissible under W.R.E. 608(b) or 611 to impeach her credibility. The court sustained the objection. Mr. Gilbert did not attempt to question Ms. Reed at trial about her other shoplifting, theft, and false reporting convictions.

[¶34] Mr. Gilbert now argues "the district court abused its discretion in denying [his] motion in limine to admit W.R.E. 608(b) evidence." (Capitalization omitted). Unlike his motion in limine in the district court, which did not specify the evidence he sought to introduce, Mr. Gilbert's argument on appeal is that the district court abused its discretion by denying his motion in limine because Ms. Reed's prior shoplifting, theft, and false reporting convictions (sans the December 19, 2019, shoplifting conviction) were

12

admissible under W.R.E. 608(b).[2] Yet, he never sought to have those convictions admitted under that rule in the district court. He did not specify those convictions in his W.R.E. 608(b) motion in limine or at the hearing on that motion.

[¶35] Mr. Gilbert does not argue on appeal that the court erred in granting the State's W.R.E. 609 motion in limine. However, he seems to contend the evidence the State sought to exclude and which the court did exclude under W.R.E. 609 was the same evidence he proposed to admit under W.R.E. 608(b). He never made such argument before the district court. At the hearing on the State's motion in limine, he argued only that the shoplifting, theft, and false reporting convictions were admissible under W.R.E. 609. He only mentioned W.R.E. 608(b) as an afterthought, informing the court he wanted to question Ms. Reed about "her car thefts" but the court had "told [him] to bring it up during trial and [it] would rule on it then."

[¶36] W.R.E. 608(b) and W.R.E. 609 are distinct evidentiary rules. An argument that evidence is admissible under one does not preserve the argument that the evidence is admissible under the other for purposes of appeal. *See Parker v. Cook,* 2022 WY 3, ¶ 13, 501 P.3d 1253, 1256 (Wyo. 2022) (declining to consider the appellant's argument that testimony was improper rebuttal and "collateral" to testimony provided earlier in the trial because the only objection appellant made at trial was that the testimony was hearsay); *Rogers v. State*, 2021 WY 123, ¶ 14, 498 P.3d 66, 70 (Wyo. 2021) ("An argument may not be made for the first time on appeal . . . . Parties are bound by the theories they advance below because it is not appropriate for this Court to reverse a district court ruling on grounds that were never presented to it. This is particularly true when our review is for an abuse of discretion[.]") (quotations and citations omitted).

[¶37] In any event, Mr. Gilbert cannot show the district court abused its discretion by denying his motion in limine seeking to admit W.R.E. 608(b) evidence.[3] *Garland v. State,*

---

[2] We do not read Mr. Gilbert's brief as challenging the district court's exclusion of the car theft in Timnath, Colorado. His only reference to that car theft is during his recount of the procedural history of the parties' motions in limine. Moreover, in the argument section of his brief, he refers to Ms. Reed's "three convictions for stealing in a relatively short time period" which, we interpret, to refer to the shoplifting and theft convictions outlined in the State's W.R.E. 609 motion in limine.

[3] Unless a court makes a definitive pretrial ruling excluding evidence, W.R.E. 103 requires a party to object at trial to the exclusion of evidence to preserve the issue for appeal. *Garland v. State*, 2017 WY 102, ¶¶ 13-14, 401 P.3d 480, 484 (Wyo. 2017). *See also*, W.R.E. 103(a)(2) ("Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."). In *Garland*, we made a distinction between a pre-trail ruling that a court will wait to consider the proposed evidence in context at trial to determine whether it is admissible—which is not definitive—and one in which the court's pretrial order is final "unless circumstances at trial changed and warranted a new effort to introduce the evidence"—which is definitive. *Garland*, ¶ 22, 401 P.3d at 486. Under the former, a trial objection is necessary because, only at that point, would the district court have

13

2017 WY 102, ¶ 11, 401 P.3d 480, 483 (Wyo. 2017) (reviewing a district court's order regarding the admissibility of evidence for an abuse of discretion) (citing *Broussard v. State*, 2017 WY 73, ¶ 8, 396 P.3d 1016, 1020 (Wyo. 2017), and *Griggs v. State*, 2016 WY 16, ¶ 129, 367 P.3d 1108, 1143 (Wyo. 2016))). *See also, Kincaid v. State*, 2022 WY 4, ¶ 31, 501 P.3d 1257, 1263 (Wyo. 2022) (appellant has the burden to show an abuse of discretion) (citing *Swett v. State*, 2018 WY 144, ¶ 11, 431 P.3d 1135, 1140 (Wyo. 2018)). Mr. Gilbert did not specify in his motion in limine or at the hearing on the motion the evidence he sought to have admitted under Rule 608(b). As a result, the court reasonably denied the motion because it did not have enough information to grant it. *Royball*, ¶ 12, 210 P.3d at 1076 ("An abuse of discretion occurs when the deciding court could not have reasonably concluded as it did." (citing *Young*, ¶ 9, 121 P.3d at 147)). The denial of the motion was without prejudice to Mr. Gilbert proposing the evidence at trial. Despite recognizing his right to raise the evidence at trial, he did not attempt to question Ms. Reed about her shoplifting, theft, and false reporting convictions.

[¶38] Mr. Gilbert was also not prejudiced by the court's denial of his motion in limine. "An error is prejudicial when 'there is a reasonable probability that the result would have been more favorable to the defendant had the error not occurred.'" *Mitchell v. State*, 2020 WY 142, ¶ 21, 476 P.3d 224, 232 (Wyo. 2020) (quoting *Larkins v. State*, 2018 WY 122, ¶ 94, 429 P.3d 28, 49-50 (Wyo. 2018)).

[¶39] Ms. Reed was a key witness for the State with respect to the conspiracy count because she testified to Mr. Gilbert's purchase of one pound of methamphetamine in Colorado in November 2019, his drug sale in Glenrock, and his return trip to Colorado for more methamphetamine on the day of Mr. Barney's car accident. However, we fail to see how impeaching Ms. Reed with her prior convictions for shoplifting, theft, and false reporting would have resulted in a more favorable verdict, given she was extensively impeached at trial. *Cf. Chauncey v. State*, 2006 WY 18, ¶¶ 18, 21, 127 P.3d 18, 23-24 (Wyo. 2006) (witness's interview, which was not disclosed to the defendant pre-trial, was favorable to the defendant because it could have been used to impeach the witness, *see Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), but it was not material under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because witness had "been exhaustively impeached, both generally and as to the specific issue addressed by the suppressed evidence" and "therefore we d[id] not believe

---

context to determine whether the evidence was admissible. *Id.*, ¶ 18, 401 P.3d at 485. If a trial court's pretrial exclusion of evidence is not definitive and no objection is made at trial, we normally apply plain error review. *Id.*, ¶ 17, 401 P.3d at 484-85 (citing *Hicks v. Zondag*, 2014 WY 16, 317 P.3d 606 (Wyo. 2014)). The district court's denial of Mr. Gilbert's motion in limine does not appear to be definitive because the court could not rule on Mr. Gilbert's motion in limine without knowing what evidence Mr. Gilbert sought to introduce. Nevertheless, we need not decide the issue because, even assuming the court's denial of Mr. Gilbert's motion in limine was definitive and the more rigorous abuse of discretion standard applies, we see no error.

that one additional piece of cumulative information ma[de] the verdict unworthy of confidence"). Ms. Reed told the jury she used and sold methamphetamine and was currently on probation for her actions in the conspiracy. She admitted she implicated Mr. Gilbert in the conspiracy in an interview she gave law enforcement to avoid going to jail for shoplifting and she, in fact, avoided going to jail. She acknowledged she was under the influence of drugs during that interview and there were inconsistencies between statements she made during the interview and her trial testimony. She also admitted she stole a car in Casper and took it to Colorado.

[¶40] The district court did not abuse its discretion by denying without prejudice Mr. Gilbert's motion in limine to admit Rule 608(b) evidence, and he was not prejudiced by the denial.

## CONCLUSION

[¶41] The district court did not abuse its discretion by denying Mr. Gilbert's motion for change of judge and Rule 608(b) motion in limine. We affirm.