# THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 129

OCTOBER TERM, A.D. 2022

October 19, 2022

EDUARDO VLAHOS,

**Appellant**
**(Defendant),**

v.

S-21-0290

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Campbell County*
*The Honorable John R. Perry, Judge*

*Representing Appellant:*
> Office of Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Francis H. McVay, Senior Assistant Appellate Counsel.  Argument by Mr. McVay.

*Representing Appellee:*
> Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames*, Senior Assistant Attorney General; Timothy P. Zintak*, Senior Assistant Attorney General.  Argument by Mr. Zintak.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY and FENN, JJ.*

 **\*** *An Order Allowing Withdrawal of Counsel was entered on August 1, 2022.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]   A jury convicted Eduardo Vlahos of felony shoplifting.  He appeals claiming his right to a speedy trial was violated.  He further claims the district court abused its discretion by allowing a juror to remain on the jury after he inadvertently saw a video about the trial on social media.  We affirm.

## ISSUES

[¶2]   Mr. Vlahos raises two issues, which we rephrase as follows:

>    I.  Was Mr. Vlahos deprived of his right to a speedy trial?
>
>    II. Did the district court abuse its discretion by not replacing a juror who inadvertently saw a video about the trial on social media?

## FACTS

[¶3]   The underlying facts of this case are not directly relevant to the issues on appeal.  In summary, Mr. Vlahos was accused of shoplifting items from Walmart by scanning lower-cost items and placing more-expensive items in his cart.  Walmart employees identified 16 instances where Mr. Vlahos had engaged in this type of conduct.  Walmart employees provided the Gillette Police Department with surveillance videos and associated receipts for these incidents.

[¶4]   On October 30, 2019, the State filed a Felony Information, alleging that between October 4, 2019, and October 19, 2019, Mr. Vlahos engaged in "ticket switching" in violation of Wyoming Statute § 6-3-404(b)(i) (LexisNexis 2019),[1] and the total value of the property he took was $4,462.98.  On October 31, 2019, the State filed an Amended Felony Information, changing the date range to between September 3, 2019, and October

---

[1] This statute provided:

> (b) A person who alters, defaces, changes or removes a price tag or marker on or about property offered for sale by a wholesale or retail store with intent to obtain the property at less than the marked or listed price is guilty of:
>
> > (i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the difference between the marked or listed price and the amount actually paid is one thousand dollars ($1,000.00) or more;

Wyo. Stat. Ann. § 6-3-404(b)(i) (LexisNexis 2019), *repealed by* 2020 Session Laws, ch. 90, § 3.

19, 2019. Mr. Vlahos was arrested on this charge on October 31, 2019. His case was bound over to district court on November 6, 2019.

[¶5]     On November 13, 2019, Mr. Vlahos's public defender filed a demand for a speedy trial. Mr. Vlahos was arraigned on November 15, 2019. On November 19, 2019, the district court issued a case management order, setting Mr. Vlahos's trial for "the week of April 6, 2020." On December 5, 2019, a second public defender entered an appearance on behalf of Mr. Vlahos after his first attorney resigned from the Public Defender's Office.

[¶6]     At the pretrial conference held on March 6, 2020, the district court and parties discussed subpoenaing witnesses, some logistical issues with viewing the surveillance videos, whether the defense had received copies of the exhibits, whether the parties anticipated filing any motions, and Mr. Vlahos's concerns about the evidence the State intended to use against him. Neither party raised any issue that would have precluded the case from proceeding to trial as scheduled. However, Mr. Vlahos's trial did not commence as scheduled on April 6, 2020, and on April 8, 2020, the district court continued the trial to June 1, 2020. The order resetting the trial did not state any reason for the continuance.

[¶7]     On May 22, 2020, Mr. Vlahos filed a pro se pleading captioned as a motion for an evidentiary hearing. In this pleading, Mr. Vlahos claimed the officers could not testify about events that happened before October 19, 2019, because they had not been called to the scene. He also claimed the video evidence did not support the charges, and he asked the district court to preclude the officers and a Walmart employee from testifying at his trial. On May 27, 2020, the district court emailed the attorneys indicating it was not sure how to interpret the pro se motion and asking them how they wished to proceed. Although the district court's email was made of record, the attorneys' responses to that email were not.

[¶8]     Mr. Vlahos's trial did not begin on June 1, 2020, and the record does not contain an official order continuing the trial. On June 3, 2020, the State filed a motion to suspend the proceedings pending an evaluation of Mr. Vlahos's competency. The motion raised concerns that Mr. Vlahos's obsession with certain evidence was precluding him from interacting and communicating with defense counsel. The motion also alleged Mr. Vlahos had engaged in other types of obsessive behavior, which resulted in him being charged with stalking. The State was concerned Mr. Vlahos might have a condition that impacted the way he experienced reality, and he was unable to be an accurate historian to help his attorney prepare for trial. The district court entered an order requiring a psychological evaluation for fitness to proceed on June 8, 2020.

[¶9]     On June 15, 2020, Mr. Vlahos filed a pro se motion indicating his relationship with his second attorney had deteriorated and requested to have new counsel appointed from outside the Public Defender's Office. Mr. Vlahos also sent a letter to the district court asking the court to deny the request for a mental health evaluation. Later that same day,

the district court sent Mr. Vlahos and the attorneys a letter indicating it would not appoint a lawyer from outside the Public Defender's Office at taxpayer expense. On June 16, 2020, Mr. Vlahos sent the district court another letter alleging the prosecution was using "false evidence" and asserting he could not cooperate with his appointed counsel. On June 16, 2020, Mr. Vlahos filed a pro se motion to fire his second attorney. This motion indicated Mr. Vlahos had fired his second attorney for a "personal reason" and was in the process of finding another attorney.

[¶10] On August 26, 2020, the State Hospital filed the competency evaluation. In the evaluation, Mr. Vlahos indicated he would cooperate "if appointed a different attorney." The evaluation stated: "Mr. Vlahos does have sufficient present capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate if appointed with different counsel . . . ." The evaluation concluded Mr. Vlahos was competent to proceed.

[¶11] On August 31, 2020, a third public defender (defense counsel) entered an appearance as counsel for Mr. Vlahos. The district court held a competency hearing on September 8, 2020. At that hearing, defense counsel indicated he would not be seeking a second evaluation. The parties agreed the case could be placed back on the trial docket. Mr. Vlahos's trial was set for February 8, 2021.

[¶12] On February 2, 2021, the State filed a second Amended Information, changing the charge from ticket switching to shoplifting.[2] The dates of the offenses and the amount of merchandise Mr. Vlahos allegedly took remained the same.

[¶13] Mr. Vlahos's trial did not commence on February 8, 2021. The district court held a video hearing on that date, where it informed the parties the court reporter had become ill the previous Friday. The court reporter had been tested for COVID-19, and although the test came back negative, the district court was concerned it might be a false negative. The

---

[2] The Amended Information still cited to Wyoming Statute § 6-3-404(b)(i). This appears to be a typographical error. The language in the Amended Information comes from Wyoming Statute § 6-3-404(a)(i), which stated:

> (a) A person who willfully conceals or takes possession of property offered for sale by a wholesale or retail store without the knowledge or consent of the owner and with intent to convert the property to his own use without paying the purchase price is guilty of:
> (i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is one thousand dollars ($1,000.00) or more;

Wyo. Stat. Ann. § 6-3-404 (LexisNexis 2019), *repealed by* 2020 Session Laws, ch. 90, § 3.

district court also stated public health officials were advising people to stay home if they were sick. The district court considered having the court reporter transcribe the trial remotely by video. However, due to her illness, she would have to take frequent breaks, and the district court was concerned that would be a distraction. The district court attempted to find a substitute reporter, but it was unable to do so. The district court indicated it would reschedule Mr. Vlahos's trial for March 8, 2021, which was "as quickly as we can possibly get this done." In response to the proposed continuance defense counsel stated:

> Your Honor, I guess the only thing that I would say is we don't have any objection to this continuance, I mean, obviously, everybody wanted to get this over with, but we understand the circumstances, and -- and the defense will not be presenting any -- any objections to it.

[¶14] On February 22, 2021, defense counsel filed a request for a second competency evaluation. Defense counsel believed Mr. Vlahos was incapable of rationally assisting in his own defense or cooperating with counsel. The request also indicated Mr. Vlahos believed he was competent and did not want another evaluation. The district court ordered the second competency evaluation that same day.

[¶15] On February 22, 2021, Mr. Vlahos filed a pro se motion to fire his third attorney. Mr. Vlahos alleged defense counsel refused to call certain witnesses, raise and argue various motions, or address his concerns about prosecutorial misconduct. He also alleged defense counsel was trying to "force" him to accept a plea deal. He renewed his request to be appointed an attorney from outside the Public Defender's Office. The district court denied the motion on February 25, 2021.

[¶16] The State Hospital filed the second competency evaluation on April 23, 2021. The evaluation indicated Mr. Vlahos did not trust his attorney or the Campbell County court. The evaluator diagnosed Mr. Vlahos with antisocial personality disorder. The evaluation stated: "Per the Defendant, if he were to be granted the ability to move his case out of Campbell [C]ounty, he would be amenable to cooperate with defense [counsel] and not engage in disrespectful communication." The evaluation concluded Mr. Vlahos was competent to proceed.

[¶17] On May 11, 2021, the district court informed the parties Mr. Vlahos's trial would be reset for June 14, 2021. On May 12, 2021, defense counsel filed a motion to continue the trial because he was not available on that date. On May 13, 2021, the district court granted defense counsel's motion to continue and indicated the trial would be reset by a separate notice.

4

[¶18]   The district court held a hearing on the second competency evaluation on May 13, 2021.  Defense counsel indicated he was not going to object to the evaluator's findings, but both parties had questions they wanted to ask the evaluator.  The State was concerned about the first competency evaluation being conditioned on Mr. Vlahos being appointed different counsel and the second evaluation being conditioned on moving the trial to another venue.  Defense counsel was worried the evaluator had not addressed his concerns that Mr. Vlahos truly believed the court and defense counsel were working with the State to convict him.

[¶19]   In her testimony, the evaluator noted Mr. Vlahos was "steadfast that he [would] not cooperate with his current counsel."  Mr. Vlahos told her he would be willing to cooperate with another attorney.  She opined his antisocial personality disorder did not impact Mr. Vlahos's ability to think rationally and factually, but it could make him a very difficult client to represent.  Mr. Vlahos did not tell the evaluator he believed defense counsel was trying to convict him.  Defense counsel asked the evaluator if another evaluation should be done to address that belief, and she indicated she was not opposed to completing an additional evaluation.  After hearing the testimony of the evaluator, the district court gave the parties the opportunity to submit written responses to the evaluation.

[¶20]   Defense counsel filed his written response to the second competency evaluation on May 17, 2021.  He indicated he was still concerned about Mr. Vlahos's competency, and the evaluator had not adequately responded to his concerns.  However, Mr. Vlahos believed the evaluations had been requested as part of a plan to convince him not to have a trial.  As such, defense counsel felt it would be imprudent to request further evaluations.  Defense counsel indicated he would neither accept the conclusions of the evaluation nor request another evaluation, and he would leave it to the district court to make a competency determination.

[¶21]   The State filed its written response to the second competency evaluation on May 20, 2021.  The State indicated the evaluator's finding that Mr. Vlahos could rationally cooperate with counsel was against the weight of the evidence.  The State believed Mr. Vlahos's antisocial personality disorder was impacting his ability to cooperate with counsel and conduct his defense in a rational manner.  Despite these concerns, the State did not request an additional evaluation.  On June 14, 2021, the district court reset his trial for July 12, 2021, even though it had not made an official finding about Mr. Vlahos's competency.

[¶22]   On July 2, 2021, defense counsel filed a motion to relieve the Public Defender from representing Mr. Vlahos.  This motion indicated Mr. Vlahos was asking defense counsel to present evidence at the trial that had no relevance or merit, which would violate the Rules of Professional Conduct.  In addition, Mr. Vlahos had indicated he did not want defense counsel to represent him if this evidence would not be presented at trial.  Defense counsel believed he was required to withdraw.  The district court set a hearing on this motion for July 9, 2021.

[¶23]  On July 8, 2021, Mr. Vlahos filed a pro se notice of exhibits he intended to use at trial and a motion to subpoena various witnesses.  On July 9, 2021, Mr. Vlahos filed a letter indicating he did not want defense counsel to represent him.  That same day, Mr. Vlahos also filed a pro se motion to continue the trial, which stated he needed more time to prepare for trial now that he was representing himself.

[¶24]  The district court held a hearing on the motion to relieve the Public Defender and a *Faretta* hearing[3] on July 9, 2021.  At this hearing, defense counsel indicated he had been given some receipts that Mr. Vlahos wanted to introduce at trial.  Defense counsel had his investigator compare those receipts to the videos and documents the State provided in discovery.  Her investigation revealed Mr. Vlahos's receipts did not match the videos or the receipts the State provided.  Defense counsel concluded the receipts were not relevant.  When defense counsel informed Mr. Vlahos of this conclusion, Mr. Vlahos claimed defense counsel was crazy and a liar, and the receipts were exact matches that proved his innocence.  Mr. Vlahos demanded defense counsel place those receipts into evidence, and defense counsel told Mr. Vlahos he would not do that.  Defense counsel felt he was ethically required to withdraw.  Mr. Vlahos indicated he did not want defense counsel to represent him.

[¶25]  The district court advised Mr. Vlahos about the dangers of representing himself.  Mr. Vlahos indicated he did not trust Public Defenders, and he wanted to represent himself.  The district court found Mr. Vlahos was competent to proceed.  The district court then took the motion to withdraw and the motion to proceed pro se under advisement, and it told the parties it would announce its decision by noon that day.  Later that day, the district court granted defense counsel's motion to relieve the Public Defender's Office, and it found Mr. Vlahos had waived his right to counsel, and this waiver was voluntary, knowing, and intelligent.  The district court denied the pro se motion for a continuance and found Mr. Vlahos would appear pro se at the trial set for July 12, 2021.

[¶26]  Mr. Vlahos's trial began on July 12, 2021.  On the morning of the second day of trial, the State informed the district court about an issue that had arisen:

> Apparently, there was a video, a 40-minute video, that was posted on Facebook last night on Mr. Vlahos's page.  I'm concerned that it may have caused a mistrial.  When my witness[] became aware of it, because she is specifically named in it, and I don't know if the jury, of their own volition or because someone else knew that they were on the jury,

---

[3] This hearing was intended to ensure Mr. Vlahos was intentionally, knowingly, and voluntarily waiving his right to counsel, and to advise him "of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Reifer v. State*, 2014 WY 139, ¶¶ 15–16, 336 P.3d 1214, 1217 (Wyo. 2014) (quoting *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975)).

provided the information to them. So, I -- I think we need to inquire with regard to each juror if they've been aware -- become aware of Mr. Vlahos's 40-minute diatribe regarding the process of this case.

Mr. Vlahos admitted he had made the video, but he claimed it was his brother who posted it on Facebook. The State found Mr. Vlahos's explanation to be suspect, and it asserted Mr. Vlahos had intentionally posted the video. The district court did not believe Mr. Vlahos's explanation, and it decided it would bring the jury in and ask them in a general way if they had seen anything pertaining to the trial.

[¶27] The jury was brought in, and the district court asked them to raise their hands if they had seen any type of publication, broadcasts, or social media postings pertaining to the trial anywhere, including newspapers, television, radio, or the internet. Only one juror, O.H., raised his hand. The rest of the jurors were then sent to the jury room while the court questioned O.H. The district court asked O.H. to describe what he saw. O.H. stated:

> Just the description of the receipts and that, just a description of what was going on a little bit. I didn't watch the whole thing. I mean, I didn't -- it just popped up on my web thing. I'm usually on there looking for car parts and stuff like that to buy, and it just popped up.

[¶28] O.H. then clarified the video had been posted to Gillette Classified's Facebook page. When asked to further describe what he had seen, O.H. stated:

> It was the defendant on there. He's just describing his receipts and that, just saying he was innocent all that, is what he was saying on that. I didn't -- it didn't bother me, I didn't watch the whole thing. . . .

O.H. explained he had only watched a couple of minutes of the video and then he shut it off.

[¶29] The State asked O.H. if he could set what he had seen in the video aside and only consider what had been presented in the courtroom. O.H. indicated that he could do so. The district court gave Mr. Vlahos the opportunity to question O.H., but he did not ask the juror any questions. The district court then asked O.H. if he could set aside what he had seen and decide the case solely on the facts he saw and heard in the courtroom. O.H. again affirmed that he could do so. Neither the State nor Mr. Vlahos moved to have O.H. removed from the jury and replaced with an alternate. The rest of the jury was then brought back, and the trial resumed.

7

[¶30]  On July 13, 2021, the jury found Mr. Vlahos guilty of shoplifting.  The district court sentenced Mr. Vlahos to imprisonment for not less than five years nor more than ten years.  This appeal timely followed.

## **DISCUSSION**

### I.     *Did Mr. Vlahos Receive a Speedy Trial?*

[¶31]  Mr. Vlahos asserts his right to a speedy trial under Rule 48 of the Wyoming Rules of Criminal Procedure (W.R.Cr.P.) and the Sixth Amendment to the United States Constitution was violated.  "We review Rule 48 and constitutional speedy trial claims de novo." *Rogers v. State*, 2021 WY 123, ¶ 17, 498 P.3d 66, 71 (Wyo. 2021) (citing *Castellanos v. State*, 2016 WY 11, ¶ 48, 366 P.3d 1279, 1294 (Wyo. 2016)).

### A.  **Wyoming Rule of Criminal Procedure 48**

[¶32]  We first address Mr. Vlahos's claim that his trial date violated his right to a speedy trial under Rule 48.  Rule 48(b)(2) states: "A criminal charge shall be brought to trial within 180 days following arraignment unless continued as provided in this rule."  Rule 48(b)(5) states: "Any criminal case not tried or continued as provided in this rule shall be dismissed 180 days after arraignment."  Compliance with Rule 48 is mandatory. *Castellanos*, 2016 WY 11, ¶ 49, 366 P.3d at 1294–95 (citing *Dean v. State*, 2003 WY 128, ¶¶ 50–52, 77 P.3d 692, 706 (Wyo. 2003); *Taylor v. State*, 2001 WY 13, ¶ 8, 17 P.3d 715, 718 (Wyo. 2001)).  "Calculating the 180–day provision of Rule 48 is a simple matter of arithmetic, beginning with arraignment and ending with commencement of trial, excluding any time periods specified in the rule." *Id.*, 366 P.3d at 1295 (quoting *Ortiz v. State*, 2014 WY 60, ¶ 33, 326 P.3d 883, 892 (Wyo. 2014)).

[¶33]  Rule 48 specifically exempts certain periods from the speedy trial calculation:

> (3) The following periods shall be excluded in computing the time for trial:
>> (A) All proceedings related to the mental illness or deficiency of the defendant;
>> (B) Proceedings on another charge;
>> (C) The time between the dismissal and the refiling of the same charge; and
>> (D) Delay occasioned by defendant's change of counsel or application therefor.

W.R.Cr.P. 48(b)(3) (LexisNexis 2021).  Rule 48 also allows the district court to continue a trial beyond the 180-day period under certain circumstances:

8

(4) Continuances exceeding 180 days from the date of arraignment may be granted by the trial court as follows:

   (A) On motion of defendant; or
   (B) On motion of the attorney for the state or the court if:

      (i) The defendant expressly consents;
      (ii) The state's evidence is unavailable and the prosecution has exercised due diligence; or
      (iii) Required in the due administration of justice and the defendant will not be substantially prejudiced; and

   (C) If a continuance is proposed by the state or the court, the defendant shall be notified. If the defendant objects, the defendant must show in writing how the delay may prejudice the defense.

W.R.Cr.P. 48(b)(4) (LexisNexis 2021).

[¶34]   The district court arraigned Mr. Vlahos on November 15, 2019.  His Rule 48 speedy trial clock began on that date and was set to expire on May 13, 2020.  Without question, his July 12, 2021, trial began after the trial clock had run if no exceptions applied. *Rogers*, 2021 WY 123, ¶ 18, 498 P.3d at 71.  We analyze each delay to determine whether Rule 48 was violated.

### 1.  *First Delay: From April 6, 2020, to June 1, 2020*

[¶35]   Mr. Vlahos's trial was originally set to begin the week of April 6, 2020.  Had his trial occurred on April 6, 2020, it would have been 143 days after his arraignment.  This setting complied with Rule 48's 180-day time limit.  The trial did not begin on April 6, 2020, and on April 8, 2020, the district court reset Mr. Vlahos's trial to June 1, 2020.  The order continuing the trial did not set forth any reason for the continuance.  The State asserts this delay was caused by the COVID-19 pandemic.

[¶36]  On March 18, 2020, this Court entered the *Order Adopting Temporary Plan to Address Health Risks Posed by the COVID-19 Pandemic* (First Pandemic Order).[4]  With some limited exceptions, this order required in-person proceedings to be suspended from March 18, 2020, to April 10, 2020.  On March 19, 2020, the Campbell County district court entered a *General Order Vacating all Jury Trials set to Begin Before May 1, 2020* (General

---

[4] *Order Adopting Temporary Plan to Address Health Risks Posed by the COVID-19 Pandemic,* https://www.courts.state.wy.us/wp-content/uploads/2020/03/COVID-19-Order.pdf.

Order).[5]  The General Order indicated the district court "received a request by the Office of the Wyoming State Public Defender that the [c]ourt suspend all jury trials scheduled to begin during March and April 2020."  The district court found "the current global pandemic constitutes extraordinary circumstances that justifies cancelling all jury trials until May 1, 2020."

[¶37]  These orders do not appear in the record, but they are publicly available on the Wyoming Judicial Branch website.  The State asked us to take judicial notice of these orders.  At oral argument, Mr. Vlahos conceded it would be appropriate for us to take judicial notice of these orders, although he did not advocate that approach.  "To have a court take judicial notice of a document, the proponent must provide written notice to the court and the 'judicially noticed documents must be physically included as part of the record filed on appeal[] or must be on file at the Supreme Court as the result of a different proceeding." *Gaston v. Life Care Ctrs. of Am., Inc.,* 2021 WY 74, ¶ 11 n.1, 488 P.3d 929, 935 n.1 (Wyo. 2021) (quoting *Cockreham v. Wyo. Prod. Credit Ass'n,* 743 P.2d 869, 872-73 (Wyo. 1987)).  The State referenced the COVID-19 orders in its brief, and those orders are on file with this Court.  It would have been preferable for the district court to make a clear record about why this continuance was granted.[6]  However, given the extraordinary and unprecedented circumstances created by the pandemic, we find it is appropriate to take judicial notice of the COVID-19 orders that were issued by this Court and the Campbell County court.

[¶38]  The General Order was entered at least in part due to the Public Defender's request to continue all jury trials set during the months of March and April.  This could be considered as a continuance on the motion of the defendant under W.R.Cr.P. 48(b)(4)(A).  It could also be viewed as a continuance on the motion of the court to which the defendant expressly consented under W.R.Cr.P. 48(b)(4)(B)(i).  Under either of these provisions, the 56-day delay is excluded from Rule 48's 180-day period.

### 2.  Second Delay: From June 1, 2020, to June 8, 2020

[¶39]  Mr. Vlahos's trial did not begin on June 1, 2020, and there is no order in the record vacating or resetting this trial.  The State asserts this delay should be attributed to the

---

[5]  *General Order Vacating All Jury Trials Set to Begin Before May 1, 2020,* https://www.courts.state.wy.us/wp-content/uploads/2020/03/General-Order-2020-04.pdf.

[6] In *Ballard v. State*, the defendant's waiver of a jury trial was done through emails that were not originally made part of the record. 2022 WY 7, ¶ 8, 501 P.3d 1269, 1270 (Wyo. 2022).  At the district court's prompting, the State eventually supplemented the record with the emails. *Id.* at ¶ 8, 501 P.3d at 1270–71. Justice Davis wrote a concurring opinion to "encourage that such waivers be handled with greater attention to ensuring a clear record." *Id.* at ¶ 24, 501 P.3d at 1273 (Davis, J. concurring).  Having a clear record is often critical when reviewing a speedy trial claim, and the district court and the parties should be cognizant of their responsibly to make a clear record.  Although it was more convenient, and possibly sometimes necessary, for district courts to communicate with counsel via email during the pandemic, all emails pertaining to substantive matters, including continuances under Rule 48, should be made part of the record.

COVID-19 pandemic, and it should be considered a continuance under the due administration of justice pursuant to W.R.Cr.P. 48(b)(4)(B)(iii).[7]  On May 15, 2020, this Court entered the *Third Order Amending March 18, 2020, Temporary Plan to Address Health Risks Posed by the COVID-19 Pandemic* (Third Pandemic Order).[8]  The Third Pandemic Order extended "the moratorium on jury trials until August 3, 2020."

[¶40]  We have not yet squarely addressed whether delays caused by the COVID-19 pandemic fall under W.R.Cr.P. 48(b)(4)(B)(iii), although we have held that COVID-19 delays should be weighed neutrally under a constitutional speedy trial analysis. *Cotney v. State*, 2022 WY 17, ¶ 24, 503 P.3d 58, 67 (Wyo. 2022).  Other jurisdictions have held COVID-19 provided sufficient cause to continue jury trials under similar speedy trial statutes. *See, e.g., United States v. Leveke,* 38 F.4th 662, 670–72 (8th Cir. 2022) (affirming the district court's decision to continue a trial under the "ends of justice" exception to the federal Speedy Trial Act when the trial could not have taken place sooner due to the safety hazards posed by the COVID-19 pandemic); *United States v. Olsen*, 21 F.4th 1036, 1040–41, 1046–49 (9th Cir. 2022) (finding continuances due to the COVID-19 pandemic fell within the "ends of justice" exception under the federal Speedy Trial Act); *State v. Brown*, 310 Neb. 224, 230–38, 964 N.W.2d 682, 688–92 (Neb. 2021) (finding continuances due to COVID-19 constituted "good cause" under Nebraska's speedy trial statute).

[¶41]  The COVID-19 pandemic presented courts with "unprecedented challenges" including "when and how to conduct jury trials without endangering public health and safety and without undermining the constitutional right to a jury trial." *Olsen*, 21 F.4th at 1040.  The "extraordinarily serious and deadly" nature of the pandemic created "exigent circumstances" that led federal and state officials to declare emergencies and issue emergency orders. *Id.* at 1041.  The stated purpose of our First Pandemic Order was "to protect the health and safety of court employees, elected officials, and the general public[.]"  In our Third Pandemic Order, we specifically found the "current health emergency" constituted "good cause" to continue most proceedings.  Given the extreme dangers posed by the COVID-19 pandemic during the spring and summer of 2020, we find continuing Mr. Vlahos's jury trial at the beginning of June was required in the due administration of justice, and the continuance falls under W.R.Cr.P. 48(b)(4)(B)(iii). Under W.R.Cr.P.

---

[7] Alternatively, the State asked us to "infer" the district court did not hold a trial on June 1, 2020, because it expected to receive and grant a motion to evaluate Mr. Vlahos's competency.  The district court emailed counsel on May 27, 2020, asking them how they wished to proceed after Mr. Vlahos filed his pro se motion for an evidentiary hearing.  However, counsels' responses to that email were not made of record by the district court, and the State chose not to supplement the record to include them.  Trying to determine if the trial was continued because the court expected to receive a competency motion "would be an exercise in speculation, because the record tells us nothing." *McEwan v. State*, 2013 WY 158, ¶ 26, 314 P.3d 1160, 1167–68 (Wyo. 2013).  We will not engage in such an exercise, and we decline to address the State's alternative theoretical reason for the delay.

[8] *Third Order Amending March 18, 2020 Temporary Plan to Address Health Risks Posed by the COVID-19 Pandemic,* https://www.courts.state.wy.us/wp-content/uploads/2020/05/COVID-19-OrderThird Amend05.15.2020.pdf.

11

48(b)(4)(C), a defendant must be notified of a continuance that has been proposed by the court, and [i]f the defendant objects, the defendant must show in writing how the delay may prejudice the defense." In this case, the district court did not issue a specific notice informing Mr. Vlahos it intended to continue the trial due to the pandemic. However, the pandemic created extraordinary circumstances causing this Court to enter the Pandemic Orders, and everyone was aware those Pandemic Orders had been issued and published. Absent such extraordinary circumstances, we expect and require district courts to comply with the requirements of Rule 48. After the Third Pandemic Order was issued on May 15, 2020, neither Mr. Vlahos nor his counsel filed a written objection pursuant to W.R.Cr.P. 48(b)(4)(C), nor did he make any attempt to show he would be prejudiced by this delay. This eight-day delay is excluded from Rule 48's 180-day period.

### 3. *Third Delay: from June 8, 2020, to September 8, 2020*

[¶42] The district court entered an order staying the proceedings pending a competency evaluation on June 8, 2020. The first competency evaluation was filed on August 26, 2020. At the hearing on September 8, 2020, neither party requested a second evaluation, and the district court found the case could be placed back on the trial docket. Rule 48(b)(3)(A) specifically excludes "[a]ll proceedings related to the mental illness or deficiency of the defendant." Both parties agree this 92-day delay is excluded from Rule 48's speedy trial calculation.

### 4. *Fourth Delay: from September 8, 2020, to February 8, 2021*

[¶43] Once the district court determined Mr. Vlahos was competent to proceed, it reset his trial to February 8, 2021. "As a practical matter, a trial cannot be set to begin the moment a suspension of proceedings is lifted." *Castellanos*, 2016 WY 11, ¶ 65, 366 P.3d at 1298. Rule 48 "anticipates such a situation" and "allows for a continuance of the 180-day limit if required [in] the due administration of justice and there is no resulting prejudice to the defendant." *Id.* (quoting *Rodgers v. State*, 2011 WY 158, ¶ 30, 265 P.3d 235, 243 (Wyo. 2011)).

[¶44] Although Rule 48 anticipates that a trial cannot be held immediately after competency is established, it does not create a blanket exception that allows trial courts to delay a trial indefinitely. Trial courts should be cognizant of their responsibility to set the trial as soon as possible and to articulate a specific reason for every delay.

[¶45] The delay in this case exceeded the delay in *Castellanos*. *Id.* at ¶ 35, 366 P.3d at 1291. The district court did not specifically articulate a reason for setting the trial five months out. However, it is apparent this delay was necessitated by the pandemic. Mr. Vlahos did not object to this setting, and he has not shown he suffered substantial prejudice as a result of the district court setting his trial for February 8, 2021. *See id.* at ¶ 66, 366 P.3d at 1298. We find the trial setting was made in accordance with Rule 48, and that the

12

153-day delay from September 8, 2020, when the suspension of the proceedings was lifted, to February 8, 2021, does not count against the 180-day deadline. *Id.*

### 5. *Fifth Delay: from February 8, 2021, to February 22, 2021*

[¶46]  Mr. Vlahos's trial did not commence on February 8, 2021, because the court reporter was ill, and there were no substitute reporters available.  Defense counsel expressly consented to the trial being continued.  The district court reset Mr. Vlahos's trial for the first available date.  This constituted a continuance with the Defendant's express consent under W.R.Cr.P. 48(b)(4)(B)(i).  This 14-day delay does not count against the 180-day deadline.

### 6. *Sixth Delay: from February 22, 2021, to July 9, 2021*

[¶47]  Mr. Vlahos and the State asserted this sixth period of delay ran from February 22, 2021, through May 13, 2021, and they agree 80 days should be excluded from the speedy trial calculation under W.R.Cr.P. 48(b)(3)(A).  However, a review of the record shows the period relating to the second competency evaluation actually ended on July 9, 2021, when the district court found Mr. Vlahos competent to stand trial.

[¶48]  Defense counsel filed a request for a second competency evaluation on February 22, 2021, and the district court ordered the evaluation that same day.  The second competency evaluation was filed with the district court on April 23, 2021.  On May 11, 2021, two days before the hearing on the second competency evaluation, the district court placed Mr. Vlahos's case back on the trial docket.  The district court held a hearing on the second competency evaluation on May 13, 2021.  Both the State and defense counsel expressed concerns about the evaluation, and they each questioned the examiner about her findings at the hearing.  At one point, defense counsel questioned the evaluator about whether an additional evaluation should be completed to address some of his concerns.  Given both parties' concerns, the district court did not make a finding about Mr. Vlahos's competency at that hearing.  Instead, the district court allowed the parties to file written responses to the second competency evaluation.  Those written responses were filed on May 17, 2021, and May 20, 2021.  The district court did not make a determination about Mr. Vlahos's competency until the *Faretta* hearing on July 9, 2021.

[¶49]  "If it appears at any stage of a criminal proceeding, by motion or upon the court's own motion, that there is reasonable cause to believe the accused has a mental illness or deficiency making him unfit to proceed, **all further proceedings shall be suspended**." Wyo. Stat. Ann. § 7-11-303(a) (LexisNexis 2021) (emphasis added); *see also* W.R.Cr.P. 12(c) (requiring the suspension of "all further proceedings" once there is reasonable cause to believe the defendant is unfit to proceed).  Once Mr. Vlahos's mental competency to stand trial was at issue, "Wyoming law, as well as the due process protections of the United States and Wyoming constitutions, required the district court to suspend the criminal

proceeding pending a determination that [Mr. Vlahos] was, indeed, competent to stand trial." *Rodgers*, 2011 WY 158, ¶ 30, 265 P.3d at 243 (citing *Hauck v. State*, 2001 WY 119, ¶ 14, 36 P.3d 597, 601, (Wyo. 2001); Wyo. Stat. Ann. § 7-11-303 (LexisNexis 2011)). "The determination of whether a defendant is mentally fit to proceed must be made by the trial court." *Snyder v. State*, 2021 WY 108, ¶ 25, 496 P.3d 1239, 1247 (Wyo. 2021) (quoting *Follett v. State*, 2006 WY 47, ¶ 8, 132 P.3d 1155, 1158 (Wyo. 2006)). Under Rule 48, the speedy trial clock is tolled from the day the evaluation is ordered until the day the trial court makes a final determination about the defendant's competency. *See Potter v. State*, 2007 WY 83, ¶ 30, 158 P.3d 656, 664 (Wyo. 2007); *Hauck*, 2001 WY 119, ¶ 14, 36 P.3d at 601. Mr. Vlahos's competency to stand trial remained pending until the district court determined he was competent. *Castellanos*, 2016 WY 11, ¶ 56, 366 P.3d at 1296. The 137 days that passed between the day the evaluation was ordered and the day the district court made a competency determination are excluded from the speedy trial calculation under W.R.Cr.P. 48(b)(3)(A). *Id.*

[¶50] Mr. Vlahos was tried on the first business day after the final competency determination had been made.[9] His original trial date of April 6, 2020, was 143 days after his arraignment and complied with Rule 48's 180-day limit. All the delays that occurred after that setting are excluded from the 180-day limit. Therefore, Mr. Vlahos was brought to trial within the time specified in the rule, and we find no Rule 48(b) violation.

## B. Constitutional Right to Speedy Trial

[¶51] "The Sixth Amendment to the United States Constitution and Article 1, § 10 of the Wyoming Constitution guarantee every criminal defendant a speedy trial." *Cotney*, 2022 WY 17, ¶ 19, 503 P.3d at 65–66 (citing *Humphrey v. State*, 2008 WY 67, ¶ 20, 185 P.3d 1236, 1243 (Wyo. 2008)). The standard of review for a constitutional speedy trial claim is well established:

> To determine whether a defendant has been deprived of his constitutional right to a speedy trial, we look to the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972): "'(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant.'" *Crebs* [*v. State*], [2020 WY 136] ¶ 14, 474 P.3d [1136,] 1142 [(Wyo. 2020)] (quoting *Webb v. State*, 2017 WY 108, ¶ 15, 401 P.3d 914, 921-22 (Wyo. 2017), and *Rhodes v. State*, 2015 WY 60, ¶ 17, 348 P.3d 404, 410 (Wyo. 2015)).

---

[9] Defense counsel filed a motion to continue the trial that was set for June 14, 2021. Thus, July 10, 2021, and July 11, 2021, were part of a continuance on the motion of the defendant under W.R.Cr.P. 48(b)(4)(A), and these two days are excluded from the 180-day period.

"We conduct this analysis to determine whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial. No single factor is dispositive. Instead, we consider the factors together and balanced in relation to all relevant circumstances. The State has the burden to prove delays in bringing the defendant to trial are reasonable and necessary."

> *Fairbourn v. State*, 2020 WY 73, ¶ 42, 465 P.3d 413, 424-25 (Wyo. 2020) (quoting *Mathewson v. State*, 2019 WY 36, ¶ 57, 438 P.3d 189, 209 (Wyo. 2019)).

*Cotney*, ¶ 19, 503 P.3d at 66.

### 1. Length of the Delay

[¶52] "The constitutional 'speedy trial clock begins to run at the time of arrest, information, or indictment, whichever occurs *first*.'" *Cotney*, ¶ 20, 503 P.3d at 66 (quoting *Fairbourn*, 2020 WY 73, ¶ 43, 465 P.3d at 425). The speedy trial clock ends when the defendant is convicted, acquitted, or is no longer under indictment. *Id.* The State filed these charges against Mr. Vlahos on October 30, 2019. He was convicted on July 13, 2021. A period of 622 days elapsed between the day the charges were filed and his conviction. No precise length of delay constitutes an automatic violation of a constitutional right to a speedy trial, but a delay of over 365 days presumptively triggers review of the other *Barker* factors. *Id.* (quoting *Mathewson*, 2019 WY 36, ¶ 58, 438 P.3d at 210).

### 2. Reason for the Delay

[¶53] The second *Barker* factor requires us to examine who was responsible for the delays. *Cotney*, 2022 WY 17, ¶ 21, 503 P.3d at 66 (quoting *Tate v. State*, 2016 WY 102, ¶ 32, 382 P.3d 762, 769 (Wyo. 2016)). "We weigh the delays caused by the State against those caused by the defendant, keeping in mind it is the State's burden to bring a defendant to trial in a timely manner and it must show that the delays were reasonable and necessary." *Id.* (quoting *Webb*, 2017 WY 108, ¶ 17, 401 P.3d at 922). "Delays caused by a defendant, such as requests for continuances, changes in defense counsel, and defendant filed pre-trial motions, may disentitle a defendant to speedy trial safeguards." *Id.* Delays caused by defense counsel are charged against the defendant. *Id.* (quoting *Mathewson*, 2019 WY 36, ¶ 59, 438 P.3d at 210). Delays caused by "circumstances such as overcrowded courts and their schedules are more neutral . . . and should not be weighed heavily against the State." *Id.* (quoting *Webb*, 2017 WY 108, ¶ 17, 401 P.3d at 922).

[¶54] The first and second delays from April 6, 2020, to June 8, 2020, were caused by the COVID-19 pandemic. Delays due to COVID-19 pandemic are neutral because the pandemic "was an extraordinary circumstance not attributable to either the State" or Mr. Vlahos. *Cotney*, 2022 WY 17, ¶ 24, 503 P.3d at 67.

[¶55] The delays from June 8, 2020, to September 8, 2020, and February 22, 2021, through July 9, 2021, were due to competency evaluations. Delays due to competency evaluations are considered neutral. *Castellanos*, 2016 WY 11, ¶ 81, 366 P.3d at 1301–02 (citing *Miller v. State*, 2009 WY 125, ¶ 41, 217 P.3d 793, 805 (Wyo. 2009)).

[¶56] The delay from September 8, 2020, to February 8, 2021, was caused by having to put the case back on the docket after the first competency evaluation. Delays due to crowded dockets and court schedules are neutral and are not weighed heavily against the State. *Cotney*, 2022 WY 17, ¶ 21, 503 P.3d at 66 (quoting *Webb*, 2017 WY 108, ¶ 17, 401 P.3d at 922).

[¶57] The delay from February 8, 2021, to February 22, 2021, was due to the court reporter's illness and COVID-19 restrictions. This falls into the neutral category. *Cotney*, ¶ 24, 503 P.3d at 67.

[¶58] Because all these delays fall into a neutral category, this factor "cannot be weighed heavily for or against either party." *Cotney*, ¶ 24, 503 P.3d at 67.

### 3. *Defendant's Assertion of His Right to Speedy Trial*

[¶59] "Although a defendant is not required to assert his right to a speedy trial, the vigor with which the defendant asserted his right is an important consideration in determining the reasonableness of any delay." *Id.* at ¶ 26, 503 P.3d at 67 (quoting *Mathewson*, 2019 WY 36, ¶ 63, 438 P.3d at 211)). "A defendant's consistent assertion of his right weighs heavily in favor of the defendant, whereas less than vigorous assertions are given little weight." *Id.* Although Mr. Vlahos filed an initial demand for speedy trial on November 13, 2019, he never objected to any of the continuances, filed renewed demands for speedy trial, or moved to dismiss for lack of a speedy trial. In addition, he expressly consented to at least one of the continuances, and he requested an additional continuance on July 9, 2021. Because Mr. Vlahos's assertion of his right was "less than vigorous," this factor is given little weight. *Id.*

### 4. *Prejudice*

[¶60] To determine if Mr. Vlahos was prejudiced by the delay, "we consider: '(1) lengthy pretrial incarceration; (2) pretrial anxiety; and (3) impairment of the defense.'" *Cotney*, 2022 WY 17, ¶ 27, 503 P.3d at 67 (quoting *Ortiz*, 2014 WY 60, ¶ 59, 326 P.3d at 896).

Mr. Vlahos "has the burden to demonstrate and substantiate [] prejudice." *Id.* (quoting *Mathewson*, 2019 WY 36, ¶ 65, 438 P.3d at 211).

[¶61]   Mr. Vlahos argues he was prejudiced because the ongoing trial continuances were outside his control, and the competency evaluations were a "pervasive waste of time" because he strongly believed he was competent.   He also asserts he suffered anxiety because of this case "as it was a continuation of the hassles he relayed to his evaluator twice over," he had restrictions on his travel, and he was facing prosecution for other alleged crimes.   He also claims he was the sole provider for his household, and he and his fiancée were expecting a second child, which contributed to his pretrial anxiety.

[¶62]   Mr. Vlahos does not cite to any case law to support his assertion that a defendant's personal belief a competency evaluation is unnecessary constitutes prejudice.   The language in Wyoming Statute § 7-11-303(a) is mandatory, and it requires a court to order a competency evaluation whenever there is reasonable cause to believe the accused has a mental illness or deficiency making him unfit to proceed.   Mr. Vlahos's behavior towards his attorneys, his numerous pro se pleadings, and his obsession with presenting irrelevant evidence gave the district court reasonable cause to believe competency evaluations were necessary.

[¶63]   The remaining assertions of prejudice could possibly fall under pretrial anxiety.   We have held: "Pretrial anxiety 'is the least significant' factor and because a 'certain amount of pretrial anxiety naturally exists,' an appellant must demonstrate that he suffered 'extraordinary or unusual' pretrial anxiety." *Cotney*, 2022 WY 17, ¶ 28, 503 P.3d at 67 (quoting *Mathewson*, 2019 WY 36, ¶ 65, 438 P.3d at 211).   "'A bare assertion of anxiety will not suffice' to show prejudice." *Id.* (citing *Ortiz*, 2014 WY 60, ¶ 61, 326 P.3d at 896). Mr. Vlahos may have had anxiety about supporting his family and expecting a second child.   However, Mr. Vlahos has not shown his anxiety was the result of the delays in this case.   In fact, he admits he was facing prosecution for other crimes during this same period. Concerns about other pending charges do not constitute extraordinary or unusual pretrial anxiety. *See Crebs*, 2020 WY 136, ¶ 48, 474 P.3d at 1149.   Mr. Vlahos has not shown his anxiety was extraordinary or unusual.   Because Mr. Vlahos has not shown prejudice, "the fourth *Barker* factor weighs 'heavily against him.'" *Cotney,* ¶ 30, 503 P.3d at 68 (quoting *Mathewson*, ¶ 67, 438 P.3d at 212).

### 5.   *Balancing the Factors*

[¶64]   Because Mr. Vlahos "failed to demonstrate he was prejudiced by the delay, 'the other three *Barker* factors must weigh heavily in his favor to establish a speedy trial violation.'" *Id.* at ¶ 31, 503 P.3d at 68 (quoting *Mathewson*, ¶ 67, 438 P.3d at 212).   The 622-day delay between when the charges were filed and Mr. Vlahos's conviction weighs in his favor. *Mathewson*, 2019 WY 36, ¶ 68, 438 P.3d at 212.   The second and third *Barker* factors are neutral, and the fourth factor weighs heavily against Mr. Vlahos.   "[O]n balance,

we cannot say the delay in bringing [Mr. Vlahos] to trial was unreasonable under the circumstances of this case." *Id.* (citing *Ortiz*, 2014 WY 60, ¶ 39, 326 P.3d at 893). "Because the delay in bringing [Mr. Vlahos] to trial was not unreasonable, he was not denied his constitutional right to a speedy trial." *Cotney,* ¶ 31, 503 P.3d at 68.

## II.    *Should Juror O.H. have been Removed?*

[¶65]  Mr. Vlahos asserts juror O.H. "stepped outside of the court's clear directions and investigated facts and evidence outside the court's oversight."  Mr. Vlahos asserts that by directing O.H. to ignore what he had seen in the video and decide the case based only on the evidence presented in the courtroom, the State and the district court asked a juror "to ignore Mr. Vlahos'[s] innocence, and his theory of defense[.]"  The State asserts Mr. Vlahos waived this issue by not objecting to the juror remaining on the panel during the trial.

[¶66]  We agree with the State.  "If the defendant knows of possible juror misconduct during trial but does not bring it to the attention of the trial court before the verdict is returned, he waives the right to a new trial on that ground." *Pena v. State*, 2013 WY 4, ¶ 49, 294 P.3d 13, 23 (Wyo. 2013).  This same rule applies to juror misconduct and inadvertent exposure to material that could potentially improperly influence a juror. *Id.* at ¶ 50, 294 P.3d at 23 (applying the rule to any "potential impropriety").  O.H. was not intentionally conducting an outside investigation.  Instead, O.H. was exposed to the video while browsing the Gillette Classified's Facebook page.  The State alerted the district court to this potential impropriety.  The district court gave Mr. Vlahos the opportunity to question the juror, which he declined.  Mr. Vlahos never objected to O.H. remaining on the jury, and he never asked to have O.H. replaced with an alternate.  Because he did not object prior to the return of the verdict, he has waived this issue on appeal.

## CONCLUSION

[¶67]  Mr. Vlahos was not denied his right to a speedy trial under W.R.Cr.P. 48 or the Sixth Amendment to the United States Constitution.  Mr. Vlahos waived any claim related to alleged juror impropriety by not objecting before the return of the verdict.  His conviction is affirmed.